[No. G037156. Fourth Dist., Div. Three. May 31, 2007.]

WILLIAM J. BERRYMAN, as Cotrustee, etc., et al., Plaintiffs and Appellants, v.
MERIT PROPERTY MANAGEMENT, INC., Defendant and Respondent.

COUNSEL

Bramson, Plutzik, Mahler & Birkhaeuser, Alan R. Plutzik, Jennifer S. Rosenberg; Reich Radcliffe, Marc G. Reich; Law Offices of Kyle Crenshaw and Kyle Crenshaw for Plaintiffs and Appellants.

Nossaman, Guthner, Knox & Elliott, Veronica M. Gray, James C. Powers and Brad B. Grabske for Defendant and Respondent.

OPINION

**MOORE, J.**—Plaintiffs appeal from a judgment entered after the trial court sustained defendant's demurrer without leave to amend. Plaintiffs allege that defendant Merit Property Management, Inc., wrongfully charged certain fees in connection with the transfer of title for home purchases. We find the facts alleged fail to state a claim on which relief can be granted, and therefore the trial court properly sustained defendant's demurrer. Because plaintiffs have failed to demonstrate that further amendment will cure the complaint's deficiencies, the trial court did not abuse its discretion in denying further leave to amend, and we affirm.

I

FACTS

Merit Property Management, Inc. (Merit), is in the business of managing residential common interest developments, typically known as homeowners associations (associations). Some homeowners belong to more than one association, because their home resides in both a "master" and "sub" association. Associations enter into written contracts with Merit to provide management services.

In April 2004, plaintiffs William J. Berryman and Betty C. Berryman, as trustees of the Berryman Family Trust (collectively plaintiffs or the Berrymans) sold a home located in two associations managed by Merit. They allege that Merit charged them $100 in document fees and $450 in transfer fees ($225 for each association), one-half of which was paid by the buyers. These fees were not remitted to the associations, but retained by Merit.

In March 2005, plaintiffs filed a putative class and representative action against Merit, several other entities that appear to be related, and Doe defendants. Alleging nine separate causes of action, the gravamen of the

complaint was that Merit wrongfully charged homeowners such as the Berrymans document and transfer fees upon the purchase or sale of their residence. Plaintiffs alleged these fees were in excess of those permitted by statute, specifically Civil Code section 1368 (subsequent statutory references, unless specified, are to the Civil Code).

The complaint thus alleged Merit had violated section 1368 and was liable under any number of theories, including violation of Business and Professions Code section 17200 et seq. (the unfair competition law or UCL), section 1750 et seq. (the Consumers Legal Remedies Act or CLRA), money had and received, breach of fiduciary duty and constructive fraud, negligence and negligence per se, and several equitable claims. Plaintiffs also sought class certification.

Merit filed a demurrer and motion to strike, but on the day before the hearing was set plaintiffs filed a first amended complaint. The first amended complaint again cited section 1368, asserting this limited the amount Merit could charge. The same nine causes of action were alleged. Merit again demurred and the trial court sustained the demurrer with leave to amend.

Plaintiffs then filed a second amended complaint (SAC), alleging the same nine causes of action. The gravamen of the complaint was also the same. With regard to the document fees, plaintiffs alleged that Merit routinely charged sellers for documents that had not been requested, regardless of whether Merit actually provided them. With regard to the transfer fees, plaintiffs alleged the fee of $225 per association was improper because it was not authorized by statute or by the contract between Merit and the association. Plaintiffs further alleged that Merit concealed the true nature and amount of these fees, both with regard to the homeowners to whom they were charged and to the associations.

Again Merit demurred, and this time the trial court sustained the demurrer without further leave to amend, entering judgment in Merit's favor on December 27, 2005. Plaintiffs filed a motion for reconsideration, attaching their proposed third amended complaint, which deleted all references to section 1368. The court denied reconsideration and entered an amended judgment in favor of Merit. Plaintiffs now appeal the court's ruling sustaining the demurrer to the SAC. They argue it properly states a cause of action, or in the alternative, that they should be permitted another opportunity to amend the complaint.

## II

## DISCUSSION

### A. *Standard of Review*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We review the trial court's decision de novo. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].)

### B. *The Underlying Statutory Scheme*

The Davis-Stirling Common Interest Development Act (the Act) (§ 1350 et seq.) governs homeowner associations. The Act "consolidated the statutory law governing condominiums and other common interest developments. . . . Common interest developments are required to be managed by a homeowners association (§ 1363, subd. (a)), defined as 'a nonprofit corporation or unincorporated association created for the purpose of managing a common interest development' (§ 1351, subd. (a)), which homeowners are generally mandated to join [citation]." (*Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 81 [14 Cal.Rptr.3d 67, 90 P.3d 1223], fn. omitted.)

Associations may hire managing agents to conduct day-to-day operations. (§§ 1363.1, 1363.2.) A managing agent is not a full-time employee of the association, but "is a person or entity who, for compensation or in expectation of compensation, exercises control over the assets of a common interest development." (§ 1363.1, subd. (b).)

One task that managing agents may perform is facilitating the transfer of ownership when a residence in an association is sold. A seller is required to

provide rather extensive documentation regarding the association, and at the seller's request, the association must provide these documents to the seller within 10 days of a written request. (§ 1368, subds. (a), (b).) "The association may charge a reasonable fee for this service based upon the association's actual cost to procure, prepare, and reproduce the requested items." (§ 1368, subd. (b).)

With respect to the transfer of title, section 1368, subdivision (c)(1) states, in relevant part, that "neither an association nor a community service organization or similar entity may impose or collect any assessment, penalty, or fee in connection with a transfer of title or any other interest except for the following: [¶] (A) An amount not to exceed the association's actual costs to change its records." In this case, plaintiffs are essentially arguing that Merit, like the "association" referred to in section 1368, cannot charge a fee greater than its actual cost to reproduce documents or to transfer title records.

## C. *The* Brown *Decision and Its Application*

In 2005, this court decided *Brown v. Professional Community Management, Inc.* (2005) 127 Cal.App.4th 532 [25 Cal.Rptr.3d 617] (*Brown*). In that case, a homeowner cross-complained against her association and its management company, alleging that the fees the management company charged for providing collection services to the association were illegal. The trial court had sustained the defendants' demurrer to Brown's complaint, which alleged that the fees violated section 1366.1, giving rise to claims under the CLRA and for negligence, among others. (127 Cal.App.4th at p. 535.)

The decision began by noting the language of section 1366.1, which states: " '*An association* shall not impose or collect an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied.' [Citation.]" (*Brown, supra*, 127 Cal.App.4th at p. 537.) The court rejected Brown's argument that this restriction also applied to management companies: "The statute prohibits an 'association' from charging fees or assessments in excess of the costs for which the fee or assessment is charged. As noted *ante*, an 'association' is a defined term under the Act, and the definition requires the 'association' to be a nonprofit entity. In contrast, the Act imposes *separate* duties on a managing agent. (See §§ 1363.1 & 1363.2.) And those statutory duties are owed to the 'association' and its board of directors, not to individual owners of separate property interests in the common interest development. (§§ 1363.1 & 1363.2.) Significantly, the Act does *not* require a managing agent to be a nonprofit entity. It is clear, both from the definitions in the Act and from the separately imposed duties, the Legislature meant 'association,' when it used that term, and it meant 'managing agent,' when it used that term." (*Id.* at p. 538.)

The same reasoning applies to the instant case. Like the language in section 1366.1, section 1368 permits an "association" to charge "a reasonable fee for this service based upon the association's actual cost . . . ." (§ 1368, subd. (b).) Further, an "association" may charge a fee for transfer of title in "[a]n amount not to exceed the association's actual costs . . . ." (§ 1368, subd. (c)(1)(A).) These limitations, like those in section 1366.1, apply to the association, not its managing agent, for the same reasons.

The *Brown* court then went on to construe the statute: "Thus, we understand the section 1366.1 prohibition, which runs expressly against an 'association,' to mean, for example, that fees or assessments levied against homeowners for the purpose of defraying the cost of mowing the grass in the common areas, or of painting the association's clubhouse, or of replacing the deck of the association's swimming pool, or any other of the myriad of the association's management and maintenance responsibilities, may not exceed the *cost to the association* for providing those services." (*Brown, supra*, 127 Cal.App.4th at p. 538.)

As the court noted, "The costs incurred by the association, for which it levies an assessment or charges a fee, necessarily include the fees and profit the vendor charges for its services. While section 1366.1 prohibits an association from marking up the incurred charge to generate a profit for itself, the vendor is not similarly restricted. Plaintiff would have it that no vendor selling its services to an association could charge a fee, or, indeed, continue in business as a profit-making enterprise. That cannot be the law." (*Brown, supra*, 127 Cal.App.4th at p. 539.)

■ The same logic applies to section 1368. As in *Brown*, an association's "costs" for purposes of the statute include "the fees and profit the vendor charges for its services." (*Brown, supra*, 127 Cal.App.4th at p. 539.) As the court noted in *Brown*, the statutory language prevents associations from charging inflated fees for documents and for transfer of title and using those fees for other purposes; it does not constrain the amount a managing agent may charge for these services. "Competitive forces, not the statute, will constrain the vendors' fees and charges." (*Ibid.*) This is no different with respect to section 1368, and plaintiffs' arguments to the contrary are entirely unpersuasive.[1] Indeed, there is no way we could logically reach a different conclusion without contradicting *Brown*, and as its holding stands on firm ground both logically and legally, we decline to do so.

---

[1] We also reject plaintiffs' assertion that Merit is advancing a theory under which section 1368 immunizes it from liability. Merit's argument is that section 1368 does not *create* liability. Thus, while plaintiffs are free to sue Merit, in order to succeed, they must advance some viable theory of recovery. That theory cannot be predicated on a statute which, as a matter of law, applies to associations and not to management companies.

## D. *The Gravamen of Plaintiffs' Claims*

Despite using slightly different language, each of plaintiffs' nine causes of action is predicated on the notion that Merit's practice of charging document and transfer fees is impermissible, based either on Merit's contract with each association or on section 1368. If this fundamental assumption is untrue, plaintiffs' claims cannot stand.

Throughout its briefs and in the court below, plaintiffs repeatedly stated that Merit's charges are "unauthorized"—that is, not specifically permitted by statute or contract. The implication, however, that a for-profit business must have statutory or contractual authorization for providing a service to a third party and charging a fee for that service, is fundamentally flawed. Indeed, it is up to plaintiffs to demonstrate why a statute or a contract *prohibits* Merit from doing so.

■ As discussed above, we reject plaintiffs' assertion that section 1368 renders the document and transfer charges unlawful. In addition to relying on section 1368, plaintiffs also assert that the management contracts limit the amount Merit may charge for documents and transfer fees. No management contract is attached to the SAC, which alleges both that the contract does not permit Merit to charge such fees at all, but even if it did, "both the Management Contracts and Civil Code § 1368 limit MERIT'S charges to $15/hour for only the actual cost to the Client Associations." The SAC also alleges that Merit's charges for documents are limited to 15 cents per page for copying.

■ The problem with these allegations is that plaintiffs are not parties to the contract with Merit—the associations are. Even assuming the allegations are true, plaintiffs are at best incidental beneficiaries and have no standing to recover under the contract. (*Southern Cal. Gas Co. v. ABC Construction Co.* (1962) 204 Cal.App.2d 747, 750 [22 Cal.Rptr. 540].) By the same logic, plaintiffs cannot use the contracts to bootstrap liability under other theories, such as the UCL, CLRA or common law theories such as negligence. Permitting such recovery would completely destroy the principle that a third party cannot sue on a contract to which he or she is merely an incidental beneficiary.

As we address plaintiffs' claims below, we shall try to prevent repeating these points. To the extent a cause of action relies on either violation of section 1368 or breach of the contracts between Merit and the associations, the claim cannot be maintained.

E. *The UCL Claims*

██ The UCL is codified in Business and Professions Code section 17200 et seq. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." (§ 17200.) "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." (*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647 [58 Cal.Rptr.2d 89].) An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent.

1. *The "Unlawful" Prong of the UCL*

██ Under its "unlawful" prong, "the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL." (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1505 [82 Cal.Rptr.2d 368].) Thus, a violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong. In attempting to state a claim under this prong of the UCL, the SAC provides a laundry list of state and federal statutes Merit allegedly violated. These include theft by false pretenses (Pen. Code, § 484), federal mail and wire fraud (18 U.S.C. §§ 1341, 1343), breach of warranty of authority (§ 2342), and several parts of the Act (§§ 1363.1, 1368), and Business and Professions Code section 17500.

While purporting to incorporate its factual allegations by reference, the SAC nonetheless fails to plead facts to support its allegations that Merit has violated each of these statutes. For example, with respect to Penal Code section 484, we are unable to find *factual* allegations asserting reliance or false pretense; the allegation that the fees are "unauthorized" is a legal conclusion. With regard to mail and wire fraud, the SAC does not allege facts supporting a specific intent to defraud or use of the federal mail or telephone wires to do so.

With respect to the purported breach of the warranty of authority, plaintiffs assert this means that Merit warrants to sellers that it has the authority from its associations to impose document and transfer fees. The Restatement, however, defines such a breach as making a contract or representation on behalf of another whom he has no power to bind. (Rest.2d Agency, § 329.) The SAC alleges that the management contracts state Merit is to act on the association's behalf with respect to transferring ownership and that such charges, which shall be "reasonable fees as allowed within the [C]ivil [C]ode" shall be charged to the owner. As the SAC expressly alleges that Merit has an agent's authority in this matter, it fails to allege a violation of the breach of the warranty of authority.

With respect to section 1363.2, plaintiffs claim Merit violates this statute by retaining funds that belong to the associations. Yet there is nothing pled to support the implied assertion that the document and transfer fees belong to the associations, rather than to Merit for performing the service.

We have already rejected plaintiffs' contention that Merit's conduct violates section 1368, and we shall address the claim under the CLRA separately below.

### 2. The "Unfair" Prong of the UCL

Under the UCL, "[a]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." (*Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 839 [51 Cal.Rptr.3d 118].)

Plaintiffs argue they have sufficiently alleged a claim under this prong of the UCL by alleging: "Merit charges the Transfer Fee to sellers for purported services which neither its Management Agreements nor any other contract, law or rule allow it to charge sellers." Plaintiffs further claim the fees exceed the amount permitted by the management contract and are retained by Merit rather than remitted to the associations.

As we discussed above (see part IIB., *ante*) we are unaware of any statutory or case law that requires a for-profit business to point to a statute or contract that allows it to charge a fee for a service. The burden is on plaintiffs to show why Merit was *not* permitted to do so. Further, as we also discussed, plaintiffs cannot bootstrap a claim for breach of contract—which, as incidental beneficiaries, they are not allowed to bring—onto a UCL claim.

Plaintiffs also argue that the court abused its discretion in sustaining the demurrer on the UCL claim, because demurrers on such claims are disfavored. In support of this assertion, plaintiffs cite *Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal.App.3d 735, 740 [162 Cal.Rptr. 543] (*Motors, Inc.*): "[T]he determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim—a weighing process quite similar to the one enjoined on us by the law of nuisance. [Citations.]" The court then goes on to state: "While this process is complicated enough after a hearing in which the defendant has revealed the factors determining the utility of his conduct, it is really quite impossible if only the plaintiff has

been heard from, as is the case when it is sought to decide the issue of unfairness on demurrer." (*Ibid.*)

 We do not take the statement in *Motors, Inc.* to mean that a special rule applies to demurrers in cases under the UCL. It simply reflects the general rule that questions of fact—such as whether the utility of the defendant's conduct outweighed the gravity of the harm—cannot be decided on demurrer. If, however, as here, the facts as pled would not state a claim even if they were true, the demurrer may be sustained.[2] The facts pled here do not state a claim that as a result of any wrongful conduct by Merit, plaintiffs suffered a substantial, unavoidable injury.

### 3. The "Fraudulent" Prong of the UCL

To support their argument that the SAC adequately pleads that Merit's behavior is fraudulent under the UCL, plaintiffs point to allegations that "when Merit obtains payment of Transfer and Document Fees through escrow upon the sale of a home, Merit does not disclose detailed listings or breakdowns of specific charges comprising its Transfer or Document Fees, and that it omits to break these out for sellers for the specific purpose of concealing from class members the nature of fees being charged." Plaintiffs further allege that Merit fails to disclose the fees to the associations and their boards of directors "in the financial reports it provides."

 "Unlike common law fraud, a Business and Professions Code section 17200 violation can be shown even without allegations of actual deception, reasonable reliance and damage. Historically, the term 'fraudulent,' as used in the UCL, has required only a showing that members of the public are likely to be deceived. [Citation.]" (*Daugherty v. American Honda Motor Co., Inc.,* *supra*, 144 Cal.App.4th at p. 838.) The court noted, however, that it could not

---

[2] Moreover, the sweeping nature of claims under the unfairness prong has been called into question in recent years. Referencing the balancing test adopted in *Motors, Inc.*, the court noted: "We believe these definitions are too amorphous and provide too little guidance to courts and businesses. Vague references to 'public policy,' for example, provide little real guidance." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 185 [83 Cal.Rptr.2d 548, 973 P.2d 527] (*Cel-Tech*).) The court went on to narrow the scope of claims of unfair practices under the UCL in cases in which a competitor alleged anticompetitive behavior. (20 Cal.4th at p. 187.)

Subsequent Court of Appeal decisions have taken note of this decision in other contexts. "*Cel-Tech*, however, may signal a narrower interpretation of the prohibition of unfair acts or practices in all unfair competition actions and provides reason for caution in relying on the broad language in earlier decisions that the court found to be 'too amorphous.' Moreover, where a claim of an unfair act or practice is predicated on public policy, we read *Cel-Tech* to require that the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." (*Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845, 854 [128 Cal.Rptr.2d 389], fn. omitted.)

find that "a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL." (*Ibid.*)

This reasoning applies here. The SAC does not allege any affirmative duty to disclose a breakdown of its fees to sellers. And while Merit has a duty to disclose the state of an *association's* financial status in the reports it provides to boards of directors, no duty is alleged to disclose *Merit's* financial status. Document and transfer fees would not be reflected in association financial reports because the fees are paid to Merit, not the association.

The remaining cases plaintiffs cite each address affirmative misrepresentations through advertising, and are inapposite here. (See, e.g., *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 951 [119 Cal.Rptr.2d 296, 45 P.3d 243]; *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211 [197 Cal.Rptr. 783, 673 P.2d 660].) Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL.

### F. *Unjust Enrichment, Constructive Trust, Accounting*

As pled in the SAC, none of these causes of action includes any factual allegations. Plaintiffs concede that each of these claims "are based on, and seek equitable relief for, the same conduct underlying the UCL claim." Indeed, as the UCL provides only equitable relief, they would appear to be entirely duplicative of that claim. In any event, as the UCL claim does not state a cause of action, neither do any of these equitable claims.

### G. *The CLRA*

The CLRA (§ 1750 et seq.) is a consumer protection statute. It enables a consumer to bring a class action on behalf of himself or herself and other consumers similarly situated if the consumer has suffered "any damage" from the use or employment of any of 23 enumerated acts or practices. (§§ 1780, subd. (a), 1781, subd. (a).) It is limited to transactions "intended to result or which result[] in the sale or lease of goods or services to any consumer . . . ." (§ 1770, subd. (a).) Consumers in a CLRA class action may recover actual damages or a statutory minimum in addition to injunctive relief, restitution, attorney fees and any other relief. (§ 1780, subds. (a), (d).)

Plaintiffs allege three violations of the CLRA: (1) "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have" (§ 1770, subd. (a)(5)); (2) "Representing that a transaction confers

or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" (§ 1770, subd. (a)(14)); and (3) "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not" (§ 1770, subd. (a)(16)). According to plaintiffs, these allegations all boil down to plaintiffs' contention that "Merit misrepresented to sellers that they owed Merit the challenged fees."

Merit argues that plaintiffs and the class they purport to represent are not "consumers" under the CLRA. The CLRA defines "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." (§ 1761, subd. (d).) It further defines "transaction" as an "agreement between a consumer and any other person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." (§ 1761, subd. (e).)

Although it is a somewhat technical distinction, we agree with Merit that the CLRA does not include transactions such as obtaining documents and transferring title. According to the SAC, these matters, and the demand for fees in return, are made through escrow. Thus, the transaction does not involve the "sale or lease of goods or services to any consumer" as contemplated by the CLRA, and the SAC fails to state a cause of action.

### H. *Breach of Fiduciary Duty*

 Plaintiffs' next claim is for breach of fiduciary duty. An association has a fiduciary relationship with its members. (*Cohen v. Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642, 650–651 [191 Cal.Rptr. 209].) In an attempt to impute the associations' fiduciary duty to Merit, plaintiffs allege an agency relationship. "Associations consented to and delegated to MERIT as their agent, and MERIT assumed responsibility for fulfilling such statutory and fiduciary duties."

 The allegation of a fiduciary relationship must be supported by either a contract, or a relationship that imposes it as a matter of law. (*Committee on Children's Television, Inc. v. General Foods Corp., supra*, 35 Cal.3d at p. 221.) The mere allegation that Merit assumed fiduciary duties to the individual homeowners is a legal conclusion, not a well-pled fact. Indeed, it appears from the SAC that Merit's relationship with individual homeowners was merely commercial. Merit performed a service and charged a fee; nothing more is apparent.

Plaintiffs' attempts to apply exceptions to the general rule that a fiduciary relationship requires a contract or imposition of that relationship as a matter

of law are unavailing. The exceptions they set forth simply do not apply here. (Cf. § 2343; *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39 [260 Cal.Rptr. 183, 775 P.2d 508]; *Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1144 [26 Cal.Rptr.3d 401].)

██ Plaintiffs' theory of "aiding and abetting" is equally unpersuasive. " 'Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.' [Citations.]" (*Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1325–1326 [58 Cal.Rptr.2d 308].) The SAC has not alleged any wrongdoing on the part of the associations—indeed, it asserts they are entirely ignorant of Merit's fees. There can be no claim for aiding and abetting without allegations that the associations are also wrongdoers.

## I. *Negligence and Negligence Per Se*

The final two claims in the SAC are for negligence and negligence per se. The latter claim is based on Merit's purported violation of section 1368, and as we have already noted, is legally without merit. As to the former claim, the SAC simply alleges: "In doing the acts of imposing and collecting Transfer Fees, MERIT owed a duty of care to Plaintiffs and other members of the class. MERIT breached that duty by charging and collecting illegal Transfer Fees."

This allegation does not include facts, merely legal conclusions. Plaintiffs argue that because the association owes a fiduciary duty to its members, it also owes an ordinary duty of care, and therefore Merit does also. We fail to follow this logic, but to the extent it relies on the assumption that Merit assumed the associations' fiduciary duty, we reject it. To the extent it relies on something else, it is waived for failure to fully develop the argument. (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 865 [64 Cal.Rptr.2d 324].)

## J. *Money Had and Received*

██ In addition to the specific counts plaintiffs allege, they also plead a common count for money had and received. This claim incorporates prior facts by reference, and is based on the same underlying facts. "A common count is not a specific cause of action, however; rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness, including that arising from an alleged duty to make restitution

under an assumpsit theory. [Citations.] When a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable. [Citations.]" (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 394–395 [20 Cal.Rptr.3d 115].) Thus, because this count must stand or fall on the viability of plaintiffs' other claims, the demurrer was properly sustained.

### K. *Further Amendment*

The burden of demonstrating that a complaint's deficiencies can be cured through further amendment is "squarely on the plaintiff." (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) From reviewing plaintiffs' proposed third amended complaint and their arguments, we are unpersuaded that further amendment would lead to a viable complaint.

It appears from the history of this case that this lawsuit began under the false impression that section 1368 applied to management companies such as Merit, not merely to associations. Additionally, plaintiffs appeared to believe that they could maintain a claim for Merit's alleged violation of its contracts with associations. Neither is true, but plaintiffs have repeatedly tried to plead around these matters.

The bottom line is that these facts—no matter how artfully they are pled—do not leave plaintiffs with any basis for a claim. They cannot cure these deficiencies by removing references to section 1368 or by pleading even more explicitly that Merit is breaching its contract with the associations. Once again, they ask for leave to plead that "*no* law, statute or contract permits Merit to impose those charges on sellers." As we have repeatedly stated, it is up to plaintiffs to demonstrate why the charge is illegal, not for Merit to justify that it is legal for it to charge a fee for a service it provides.

We understand plaintiffs may find the total of $325 in charges an irksome part of the home resale process. They may believe those fees are out of line with market forces. Their remedy, then, is to persuade their association's board of directors to find a management company that offers these services for less. If Merit realizes it is losing business because its fees are out of line with the marketplace, it will surely adjust its fees accordingly. Similarly, if they believe Merit is breaching its contract with the association by charging such fees, they can demand their board of directors seek redress from Merit directly. If they believe they were charged $100 for documents and never requested or received *any* documents whatsoever, they are free to bring a suit in small claims court to recover that amount. None of the factual allegations

presented thus far, however, nor the proposed amendments to them, support the claims advanced here. The demurrer was properly sustained without further leave to amend.

## III

## DISPOSITION

The judgment is affirmed. Merit is entitled to its costs on appeal.

O'Leary, Acting P. J., and Aronson, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 10, 2007, S154370.