Filed 9/23/15  Salameh v. 5th and K Master Assoc. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| TAMER SALAMEH et al., | D066096 |
| Cross-complainants and Appellants, | |
| v. | (Super. Ct. No. 37-2010-00094424-CU-OR-CTL) |
| 5TH AND K MASTER ASSOCIATION, INC. et al., | |
| Cross-defendants and Respondents. | |

APPEALS from a judgment of the Superior Court of San Diego County, Joel M.

Pressman, Judge.  Affirmed.


Aguirre & Severson, Michael J. Aguirre, Maria C. Severson; Stris & Maher and

Peter K. Stris for Cross-Complainants and Appellants.

Lewis Brisbois Bisgaard & Smith, Charles S. Haughey, Jr., Raul L. Martinez,

Esther P. Holm and Eric Kizirian for Cross-defendants and Respondents 5th & K Master

Association, Inc., 5th & K Parcel 1 Owners' Association, Inc., 5th & K Parcel 2 Owners'

Association, Inc., 5th & K Parcel 3 Owners' Association, Inc., Bhavesh Patel, Ron Adelhelm and Renee Molloy.

Cox, Castle & Nicholson, Frederick H. Kranz and Lynn T. Galuppo for Cross-defendants and Respondents Tarsadia Hotels, 5th Rock, LLC, MKP One, LLC, MSP One, LLC, Gaslamp Holdings, LLC, T-12 Three, LLC, Evolution Hospitality, LLC, Tarsadia Investments, LLC, and T-2 Development, LLC.

Owners of condominium guestrooms (Owners) in the Hard Rock Hotel San Diego (Hotel) asserted various claims against the Hotel developer/operator and Owners' associations, including fraud, breach of fiduciary duty, and unfair competition. Owners appeal an order granting cross-defendants' motions for judgment on the pleadings, which the trial court entered after finding that the operative cross-complaint failed to state a cause of action. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Factual Allegations in the Operative Third Amended Cross-complaint (TACC)*

Beginning in 2006, cross-complainants/Owners purchased individual rooms at the Hotel, which is a full-service hotel comprised of 420 condominium-hotel rooms, meeting rooms, a spa, bars, retail stores, and restaurants. The Hotel development project was initiated by members of the Patel family for investment and commercial purposes. The Patel family formed, operated and/or controlled the companies that were sued as cross-defendants, including: 5th Rock, LLC (5th Rock), the entity that developed and sold the

2

condominium units; Tarsadia Hotels (Tarsadia), the entity that initially managed and operated the Hotel; and a number of other affiliated entities (collectively, Developer).

The Hotel is a common interest development constructed over several parcels of real property. Each Owner elected to contract with Tarsadia to provide room management services. By purchasing individual Hotel rooms, Owners also became members of the owners' associations (Association).[1] The Association administered the Hotel pursuant to recorded covenants, conditions, and restrictions (CC&Rs). The individually sued Association directors, who comprised a majority of the Association's board, were employees of the Developer. The Association collected assessments from Owners for a variety of services, including maintenance of common areas, lighting, pest control, security, etc., which were deposited in Association-controlled bank accounts.

Owners allege that they were overcharged for both room management fees and Association assessments as a result of misrepresentations and/or omissions in information they were provided. These overcharges constitute the alleged harm underlying each of Owners' causes of action.

Owners allege that the overcharged room management fees, which they claim total more than $45 million since 2008, occurred as follows. Under optional rental management agreements (RMAs), Tarsadia agreed to charge each Owner an amount equal to 50 percent of the room's "Net Rental Revenues" in exchange for managing the

---

[1] There were three sub-associations, each of which was an association of Owners of units located on three different parcels of property. Each of the sub-associations was a member of the "master association." The master association had the power to levy assessments on the sub-associations and their members.

3

room. It is undisputed that Tarsadia in fact charged each Owner this amount. The RMAs defined Tarsadia's responsibilities to Owners, which included renting the units, providing room service to the units' guests as needed, providing housekeeping services, and performing repairs. Owners claimed that instead of being charged 50 percent of "Net Rental Revenues," they should have been charged "[Three percent] of Gross Room Revenue" based on a hotel management agreement (HMA) between 5th Rock and Tarsadia.

The HMA defined Tarsadia's responsibilities to 5th Rock for Hotel operations, including purchasing uniforms and food, obtaining licenses, and entering into contracts with other service providers. Under the HMA, 5th Rock agreed to pay Tarsadia three percent of the Hotel's gross operational revenues as a fee for hotel management services.

With respect to the claim that Owners were overcharged for Association assessments, Owners allege that the Association retained an independent property management company, N.N. Jaeschke, Inc. (predecessor-in-interest Associa) (NNJ) to provide administration, repair, and maintenance services under an association management agreement (AMA). NNJ was the "master managing agent" of the Association. Owners maintain that without informing the Owners, individual Association board members forced NNJ to contract with Tarsadia to perform certain repair and maintenance supervisory duties that the Owners believed were being performed by NNJ. Owners contend that this constituted an improper delegation of duties. Owners also claim that, with respect to claims for reimbursement of expenses, NNJ "reverse-engineered" work orders by writing descriptions of amounts and purposes that materially

4

deviated from the amounts and purposes in the invoices that Tarsadia submitted to NNJ, and presented these "reverse engineered" invoices to Owners for payment. Owners further claim that NNJ used a shorthand method to keep Association records, such as naming the financial statements "Hard Rock Hotel Master" rather than using the actual name, "5th and K Master Association."

An independent services agreement (ISA) governed the business arrangement between NNJ and Tarsadia. The ISA provided that NNJ would pay 53 percent of its management fee to Tarsadia. The TACC characterized this as "kickback" payments.

### B.     *Procedural History*

On multiple occasions, cross-defendants filed demurrers and motions for judgment on the pleadings related to prior iterations of the cross-complaint, which were overruled and denied by the trial court (Judge Denton). In 2012, the court granted Owners' motion for class certification. Thereafter, Judge Denton retired from the bench, and the case was reassigned to Judge Pressman.

At a November 2013 status conference, cross-defendants argued that Owners' legal theories had morphed throughout the course of the proceedings in the trial court and that the allegations that Owners were making at the time did not match the operative cross-complaint, which had been based in large part on a theory of "fraud in the inducement"—a theory no longer being asserted. Cross-defendants urged the trial court to order Owners to file an amended cross-complaint to conform to their present legal theories. Prior to any such order being issued, Owners agreed to amend their cross-complaint, and in January 2014, Owners filed their TACC.

5

Cross-defendants moved for judgment on the pleadings. Cross-defendants also requested judicial notice of the CC&Rs, RMA, HMA, AMA, and ISA, which were referenced in, but not attached to, the TACC, and moved to strike portions of the TACC, including excerpts of deposition transcripts. The trial court granted cross-defendants' requests for judicial notice and motions for judgment on the pleadings. The court also granted in part the motions to strike. In its order, the court found that cross-defendants' motions were properly brought since the TACC was a new pleading and raised issues different from those previously considered by Judge Denton. The court denied Owners' request for leave to amend.

## DISCUSSION

### A. *Threshold Issues*

1. *The trial court properly considered cross-defendants' motions for judgment on the pleadings*

Owners contend that cross-defendants' motions for judgment on the pleadings were procedurally defective because the trial court had overruled challenges to prior iterations of the cross-complaint. Cross-defendants argue the TACC was a new pleading that superseded previous cross-complaints, and that the TACC had never been challenged. We agree with cross-defendants.

Owners apparently filed the TACC as a final recitation of their legal theories and class claims for trial. The TACC supplanted Owners' prior cross-complaints and was thus subject to challenge. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884; *Carlton v. Dr. Pepper Snapple Group, Inc.*, (2014) 228 Cal.App.4th 1200, 1211

6

[filing new amended complaint "opened the door" to another demurrer].) Contrary to Owners' argument, cross-defendants were not required to comply with Code of Civil Procedure section 1008 because they were not seeking "reconsideration" of any order. (Code Civ. Proc., § 1008(a); *Farber v. Bay View Terrace Homeowners Association* (2006) 141 Cal.App.4th 1007, 1013 ["As for the cross-complaint, the Association's demurrer was its first challenge to that new pleading, so the rule regarding motions for reconsideration does not apply."].)

2.      *The trial court properly granted cross-defendants' request for judicial notice*

Owners contend that the trial court erred in taking judicial notice of agreements and CC&Rs referenced in the TACC, and further erred by not accepting their interpretation of those documents as pled. Cross-defendants respond that the facts judicially noticed by the court were taken from legally operative contracts directly relied upon by Owners in the TACC, and that these facts were not reasonably subject to dispute. We review a trial court's decision to grant judicial notice for abuse of discretion. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264.)

Evidence Code section 452, subdivision (h) provides that a court may take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Under this provision, courts have judicially noticed not only the existence and recordation of documents, but also a variety of matters that can be deduced from the documents. (E.g. *Fontenot, supra* 198 Cal.App.4th at p. 265 [judicial notice taken of beneficiary status reflected in deed of trust]; *Poseidon Development, Inc. v.*

7

*Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117-1118 [in sustaining demurrer, judicial notice properly taken of the parties, dates, and legal consequences of a series of recorded documents relating to a real estate transaction].) Further, where there is no reasonable dispute as to an agreement's meaning, authenticity, and enforceability, courts have judicially noticed facts that clearly derive from the legal effect of the agreement. (E.g. *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 759 [judicial notice properly taken of purchase and assumption agreement showing that assets but not liabilities of Washington Mutual Bank had been sold to JPMorgan Bank]; *Align Technology, Inc. v. Bao Tran* (2009) 179 Cal.App.4th 949, 956 [judicially noticing agreement settling prior suit, which was referred to in the complaint, to evaluate whether current suit was barred].)

In this case, there was no dispute as to the existence, authenticity, or enforceability of any of the agreements. Indeed, the agreements' principal terms were set out in the TACC, albeit in an incomplete fashion. Facts noticed by the trial court in evaluating the TACC's legal sufficiency were taken directly from the texts of the agreements and were not reasonably subject to dispute. For example, the court noted that under the RMA, Tarsadia's "operator's fee" was 50 percent of the owners' net room revenues, for specified room management services (RMA, section III), and that under the HMA, Tarsadia's compensation was three percent of gross income for hotel operation services (HMA, paragraph 4.1).

We conclude that the trial court did not abuse its discretion in granting cross-defendants' requests for judicial notice.

8

3.	*The trial court properly refused to consider cross-complainant's extrinsic evidence*

Owners maintain that the trial court erred in refusing to consider "extrinsic evidence" to aid the court in its interpretation of the HMA and other agreements. In particular, Owners inserted excerpts of the Developer's executives' deposition transcripts in the TACC, which the court ordered stricken as "evidentiary facts or conclusions of law." Code of Civil Procedure section 436 states: "The court may . . . upon terms it deems proper . . . [s]trike out any irrelevant, false, or improper matter inserted in any pleading." A motion to strike a pleading is reviewed for abuse of discretion. (*Pacific Gas & Electric Co. v. Superior Court* (2006) 144 Cal.App.4th 19, 23.)

The trial court did not abuse its discretion in striking the deposition transcript excerpts, which were not factual allegations and were therefore improperly included in the TACC. (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 867, fn. 1 (*Blickman*) ["The cross-complaint is a model of improper pleading . . . . A pleading is no place to quote, paraphrase, or even allude to the testimony of witnesses."].) The excerpts were also duplicative of the factual bases for Owners' claims. The court properly refused to consider the proffered deposition testimony in evaluating the TACC's legal sufficiency.

B.	*Motion for Judgment on the Pleadings*

1.	*Standard of review*

A judgment on the pleadings for cross-defendants is appropriate when the operative cross-complaint fails to allege facts sufficient to state a cause of action. (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii).) A motion for judgment on the pleadings is

9

equivalent to a demurrer and is governed by the same de novo standard of review. (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.) "All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law; judicially noticeable matters may be considered." (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672.)

2.      *Fraud and concealment claims*

" 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) "Concealment is a species of fraud or deceit." (*Blickman, supra*, 162 Cal.App.4th at p. 868.) The elements of a concealment action are: (a) defendant suppressed a material fact; (b) the defendant was under a duty to disclose to plaintiff; (c) the fact was intentionally suppressed with intent to defraud; (d) plaintiff was unaware of the fact and would not have acted if the fact had been known; and (e) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage. (*Ibid.*) "In California, fraud must be pled specifically; general and conclusory allegations do not suffice." (*Lazar, supra*, at p. 645.)

We conclude that Owners failed to state a cause of action for fraudulent misrepresentation or concealment. With respect to Owners' claim that they were damaged when they were overcharged room management fees, the facts alleged— stripped of Owners' conclusory legal assertions—do not support the occurrence of any

10

"overcharges." We agree with cross-defendants that in alleging fraudulent misrepresentation and concealment, Owners have hopelessly conflated the RMA and the HMA. Each Owner entered into an optional RMA with Tarsadia pursuant to which Tarsadia agreed to manage Owners' individual rooms, including renting them out, providing housekeeping services, and maintaining the rooms' furnishings to Hotel standards. For these and other services, each Owner agreed to pay 50 percent of his or her room's "Net Rental Revenues." It is undisputed that Tarsadia in fact charged Owners 50 percent of the "Net Rental Revenues." Owners were thus charged exactly what they bargained for, and no factual misrepresentation occurred.

The HMA was an entirely separate agreement between 5th Rock and Tarsadia, pursuant to which Tarsadia would manage and operate the Hotel and receive three percent of the Hotel's Gross Revenues in exchange for its services. As explicitly defined in the HMA, "Gross Revenues" came from sources different from the "Net Rental Revenues" of Owners' rooms.[2] Owners were not parties to the HMA, and the TACC fails to identify any relevant statutory or contractual duties that would have required the Developer to provide Owners with the HMA or to apprise them of its terms. The RMAs between Tarsadia and each Owner disclosed that Tarsadia also managed the Hotel and would be acting as rental agent/manager for other Owners. In short, Owners have not

---

[2] For example, "Gross Revenues" included fees collected from renting meeting rooms, providing valet parking, and selling food. The panoply of services required to operate the Hotel were entirely different from those required for the management of individual rooms.

11

sufficiently alleged facts to support the existence of any misrepresentation or concealment of information that was required to be disclosed, nor any intent to defraud.

Owners' claim that they were not informed of the fact that NNJ partially delegated duties to Tarsadia and that they should have been informed of NNJ's administrative and record-keeping activities, is similarly meritless. The recorded CC&Rs provide that the "Association may delegate its responsibility to provide the Master Services to the Hotel Owner, the Hotel Operator or the Master Managing Agent . . . by entering into a Management Agreement with the Hotel Operator or Master Managing Agent." Under the AMA, NNJ was the master managing agent of the Association, and was expressly allowed to further delegate its duties. The Association's designation of an independent managing agent comports with the law and common sense. (See, e.g., Civ. Code, §§ 5375, 5380 [concerning common interest development managing agent's receipt of association funds].) As documented in the ISA, NNJ contracted with Tarsadia to provide repair and maintenance supervisory services, and agreed to pay Tarsadia a portion of its management fee in return. The TACC does not sufficiently allege how this delegation of duties and NNJ's bookkeeping entries constitute actionable fraud or concealment.

Finally, Owners failed to allege any plausible reliance or damages resulting from the purportedly misrepresented or omitted information. Absent a specific factual foundation, conclusory allegations that Owners "relied," were "damaged," or "overcharged" do not suffice. Owners were charged the room management fees that they agreed to pay. Owners do not indicate how they were harmed by the Association's delegation of duties to NNJ or by NNJ's contracting with Tarsadia to perform repair and

12

maintenance supervisory services. Nor do Owners claim that the services were not performed. Owners thus failed to sufficiently allege the elements of fraud or concealment.[3]

3.      *Breach of fiduciary duty claim*

A breach of fiduciary claim requires: (a) the existence of a fiduciary duty, (b) a breach of that duty, and (c) damages proximately caused by that breach. (*Mosier v. Southern California Physicians Insurance Exchange* (1998) 63 Cal.App.4th 1022, 1044.)

---

[3]      At oral argument, counsel for Owners began describing a different theory of liability to support their claims, including that cross-defendants had used the Owner's assessments collected on certain parcels (i.e., parcels two and three) to maintain areas located on a separate parcel (i.e., parcel one). Counsel maintained that the issue was encompassed within the opening brief's general argument that the TACC adequately pleads a cause of action. Owners' counsel also represented that the issue had been referenced in "passing" in the reply brief, but ultimately conceded that it was not raised as a separate argument supported with points and authorities.

The issue was not properly raised and has been forfeited. (*Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 316, fn. 7 [alternative basis for sustaining demurrer not advanced on appeal would not be considered].) Having scoured the Owners' briefs, we conclude that the issue was not properly articulated. On a motion for judgment on the pleadings, we independently review the factual allegations to determine whether the challenged pleading sufficiently states a cause of action under any legal theory. We are not required, however, to independently develop a party's arguments and legal theories. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties."]; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived."]; see also Cal. Rules of Court, rule 8.204 (a)(1)(B) ["Each brief must [¶] . . . [¶] [s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority"].)

Finally, Owners' counsel asserted that we should reverse and allow leave to amend on the unarticulated theory of liability. This merely underscores the fact that the issue was not adequately pled in the first instance. As we will discuss, Owners have not demonstrated, either in the trial court or on appeal, that the TACC's deficiencies could be cured. The trial court thus acted within its discretion in denying leave to amend.

To be actionable, the breach of duty must be by one who is in a confidential or fiduciary relationship to another. (*Guthrie v. Times-Mirror Co.* (1975) 51 Cal.App.3d 879, 889 [no confidential relationship alleged in arms length sales transaction].)

Owners' claim for breach of fiduciary duty is based on the same factual circumstances underlying their fraud claims. As we have discussed, the TACC does not allege facts sufficient to support a claim that Owners were "overcharged" for room management fees or that the Developer or Association had any duty to provide Owners with a copy of the HMA. In addition, NNJ's delegation of repair and maintenance supervisory duties to Tarsadia was not wrongful, and there was nothing requiring that this delegation of duties be disclosed to Owners. Further, Owners failed to allege that NNJ's method of bookkeeping had any cognizable impact on Owners. The TACC thus failed to allege any breach of duty.

We reject Owners' categorical labeling of the Developer, Association, and Association directors as "fiduciaries" for all intents and purposes. There is no question that a project developer or owners' association may have certain duties to purchasers or owners. (*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal.App.3d 783, 801 [alleged duty to collect funds for the costs of maintaining common areas consistent with conditions, covenants, and restrictions].) However, Owners failed to allege that the Developer and/or Association breached any relevant statutory or contractual duties. In sum, the TACC does not state a cause of action for breach of fiduciary duty.

14

4.       *Unfair competition (Bus. & Prof. Code, § 17200* et seq.*) and failure to provide documents claims (Bus. & Prof. Code, § 11018.6)*

Owners base their claims of unfair competition (unfair, unlawful or fraudulent business practices), Business and Professions Code section 17200 et seq.(UCL)*,* on the same conduct underlying their other claims, as described above, and contend that owners' associations that engage in "commercial" acts may be sued under the UCL.  Cross-defendants contend that the Association may not be sued since it is a nonprofit corporation.  We need not address whether the Association may be sued for unfair competition because Owners do not have standing to sue under the UCL. (Bus. & Prof. Code, § 17204 [private action may be initiated only by "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition"]; *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 325.)  As discussed, *ante*, the TACC does not sufficiently allege that Owners suffered any injury or were damaged "as a result of" cross-defendants' actions.  Moreover, the TACC fails to allege any unfair, fraudulent, or unlawful conduct by cross-defendants within the meaning of the UCL. (See *Searle v. Wyndham International, Inc.* (2002) 102 Cal.App.4th 1327, 1334-1335 [hotel's failure to disclose a 17 percent service charge was paid to the servers is not unlawful, unfair, or fraudulent].)  Judgment was properly granted for cross-defendants under the UCL (fourth, fifth and sixth causes of action).

Finally, in their seventh cause of action premised on Business & Professions Code section 11018.6, Owners claim that they should have been provided a copy of the HMA and ISA.  This claim is frivolous.  Assuming *arguendo* that the statute provides a private

15

right of action, the statutory terms plainly do not extend to the service contracts at issue in this case. (Bus. & Prof. Code, § 11018.6, subds. (a)-(f) [sellers of planned community subdivisions must provide to owners: covenants, conditions, and restrictions; association articles of incorporation and bylaws; other like documents; statement of assessments].) Business & Professions Code section 11018.6 did not require 5th Rock to provide Owners with copies of the HMA and ISA. Judgment for cross-defendants on the seventh cause of action was proper.

C.  *Leave to amend*

After the trial court granted cross-defendants' motions for judgment on the pleadings, Owners moved for reconsideration and requested leave to amend. Owners argue that the trial court should have provided them an opportunity to amend their complaint because, in essence, they were surprised by the outcome since challenges to previous cross-complaints had been overruled. Cross-defendants argue that Owners have not demonstrated how the TACC's substantive defects could be cured, particularly given the terms of the relevant agreements, which we have concluded were properly the subject of judicial notice.

Where a complaint is defective, leave to amend should be liberally granted if there is a reasonable possibility that the defect can be cured by amendment. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971 [leave to amend granted where an alternative theory of liability had been presented].) A trial court's denial of leave to amend is reviewed for abuse of discretion. (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486.) It is the plaintiff's burden to demonstrate that a complaint's deficiencies can be

16

cured. (*Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1560 [re-pleading would not alter conclusion that challenged fees were not illegal].)

Owners failed to demonstrate, both in the trial court and on appeal, how the TACC's deficiencies could be cured. The TACC was filed in preparation for trial after years of litigation concerning Owners' claims, including discovery and class certification. The facts and legal theories were fully developed, and Owners did not present any new facts to the trial court in their motions for reconsideration. Owners fundamentally misunderstand and misconstrue the pertinent agreements, and have not articulated how the allegations in the TACC could be amended to state a claim. (*Berryman, supra*, 152 Cal.App.4th at p. 1560 ["The bottom line is that these facts—no matter how artfully they are pled—do not leave plaintiffs with any basis for a claim."].) We therefore conclude that the trial court did not abuse its discretion in denying leave to amend.

DISPOSITION

The judgment is affirmed.  Cross-defendants are entitled to recover costs on appeal.


AARON, J.

WE CONCUR:


McCONNELL, P. J.


Prager, J.*

---

*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18