DRILLING CONSULTANTS, INC., William B. Ziegler, William C. Ziegler, and Sonya P. Ziegler, Plaintiffs,

v.

FIRST MONTAUK SECURITIES CORP., et al., Defendants.

Case No. 8:10–CV–2873–T–23EAJ.

United States District Court, M.D. Florida.

May 27, 2011.

Michael K. Wilson, Michael Meyer, Broad and Cassel, Orlando, FL, for Plaintiffs.

Robert I. Rabinowitz, Becker & Poliakoff, LLP, Red Bank, NJ, Benjamin Joseph Biard, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Enrique D. Arana, Todd M. Fuller, Michael C. Shue, Jorden Burt, LLP, Miami, FL, Daniel Paul Dietrich, William J. Schifino, Jr., Williams, Schifino, Mangione & Steady, PA, Tampa, FL, for Defendants.

## ORDER

STEVEN D. MERRYDAY, District Judge.

The plaintiffs sue (Doc. 2) in state court and allege claims "aris[ing] from and relat[ing] to the marketing and sale of life insurance policies for defined benefit pension plans allegedly in compliance with Section 412(i) of the Internal Revenue Code." The defendants remove (Doc. 1) and allege diversity jurisdiction under 28 U.S.C. § 1332. A February 15, 2011, order (Doc. 25) denies the defendant Donald Haskell's motion (Doc. 11) to compel arbitration. The plaintiffs file (Doc. 30) a second amended complaint, and both Haskell and the defendant Pacific Life Insurance Company ("Pacific Life") move (Docs. 45, 47) to dismiss. The plaintiffs respond (Docs. 55, 56) in opposition.

*Allegations of the Second Amended Complaint*

The plaintiffs William C. Ziegler, William B. Ziegler, and Sonya P. Ziegler (the "Zieglers") reside in Hillsborough County, Florida and operate Drilling Consultants, Inc., ("Drilling Consultants"), a Florida corporation. The defendant First Montauk Securities Corp. ("First Montauk") is a New Jersey corporation, Pacific Life is a Nebraska Corporation (formerly a California corporation) with a principal place of business in California, and both Haskell and the defendant Anthony P. Lombardi

reside in California and each works as an agent for both First Montauk and Pacific Life. In August, 2002, while acting as an agent of First Montauk and Pacific Life, Haskell and Lombardi proposed to the Zieglers the establishment of a defined benefit pension plan for Drilling Consultants. Haskell and Lombardi contacted the Zieglers by telephone and by mail. Shortly thereafter, Haskell and Lombardi met with the Zieglers in Ft. Lauderdale, Florida, and "touted the benefits ... of establishing the [p]lan...."

The proposed plan consisted of a "defined benefit pension plan created under Section 412(i) of the Internal Revenue Code." Section 412(i) requires [1] that a plan receive "fund[s] exclusively [from] the purchase of individual insurance contracts," i.e., a whole life insurance policy or an annuity.[2] An "abusive" Section 412(i) plan involves the employer's contributing abnormally large amounts of cash to a trust. The trustee uses the cash to pay a high insurance premium, and the employer claims an income tax deduction for each contribution. As a result of the employer's large cash contribution, the policy accumulates over a few years an impermissibly large cash reserve. However, the policy carries a high "surrender charge," which disguises and suppresses the value of the policy's cash reserve. After five to seven years, a participant may purchase the policy from the trust for the "surrender value," the value of the policy's cash reserve reduced by the surrender charge. The purchase is "tax-free," and the surrender charge gradually decreases to zero within a few years after the purchase. Therefore, the policy increases dramatically in value. The high cash contribution and the high surrender charge— which result in a "disconnection between the benefit[ ] provided by the insurance [policy] and the benefit[ ] promised under the defined benefit pension plan being funded by the [policy]"—distinguishes an abusive Section 412(i) plan from a traditional Section 412(i) plan.

The Internal Revenue Service (the "IRS") historically "heavily scrutinizes" Section 412(i) plans because the plans "had been deemed ... abusive tax avoidance transactions...." For example, in 1989, the IRS explained the "inappropriateness" of using the surrender value as the fair market value of the policy. In 2000, the IRS issued a "notice" that identifies as a "listed transaction" and an "abusive tax shelter" a Section 412(i) plan containing a "springing" cash value policy (i.e., a policy, similar to the plaintiffs' policy, that dramatically increases in value after the surrender charge diminishes). On February 13, 2004, the IRS issued a press release, two "revenue rulings," and proposed regulations to curb the marketing and sale of

---

1. 26 U.S.C. § 412 (2000) (current version at 26 U.S.C. § 412(e)(3) (2006)).

2. As explained in *Zarrella v. Pacific Life Ins. Co.*, 755 F.Supp.2d 1218, 1221 (S.D.Fla.2010) (Cohn, J.):

> A 412(i) plan is an employer-sponsored defined benefit plan that provides retirement and death benefits to its participants under § 412(i) of the Internal Revenue Code. To qualify as an insurance contract plan under § 412(i), the plan must meet certain requirements listed in the statute, including that the defined benefits provided by the plan must be equal to the benefits provided under each insurance contract at normal retirement age. § 412(i)(3). The plan requires careful design and "sophisticated actuarial calculations ... to determine a benefit formula that is consistent with the employer's objectives and budget." To create such a plan, an employer establishes a trust to hold the plan's assets, and the trust uses tax-deductible employer contributions to purchase and maintain life insurance and/or annuity policies for the plans. (citations omitted).

Section 412(i) plans that "appeared to constitute illegal and abusive tax shelters." The proposed regulations targeted insurance policies that were "structured in a manner that results in a temporary period during which neither a [policy's] reserves nor its cash surrender value represents the fair market value of the [policy]" at the time that the participant purchases the policy. The IRS stated (1) that a plan containing a springing policy could not qualify as a Section 412(i) plan and (2) that a premium in excess of the amount necessary to provide the "permissible" death benefit could not qualify for a tax deduction. The regulations became final in August, 2005.

According to the plaintiffs, the defendants in 2002 (1) "knew or should have known" that the IRS heavily scrutinized the type of Section 412(i) plan that the defendants marketed and sold to the plaintiffs and (2) acted "with a conscious disregard of the rights and interests of [the] [p]laintiffs[ ] and for the purpose of enriching themselves...." In order to "reap[ ] enormous premiums and commissions from the sale of the .... insurance policies," the defendants repeatedly affirmed that the plan was neither "abusive" nor illegal. In late 2002 and early 2003, the defendants (through their agents Haskell and Lombardi) described themselves as possessing "special expertise [in] defined benefit pension plans, insurance policies, and related federal income tax matters...." During the defendants' discussion and correspondence with the plaintiffs in 2002, the defendants stated (1) that the life insurance policy issued by Pacific Life qualified for use in a Section 412(i) plan, (2) that the policy provided a "permissible death benefit," (3) that the premium payment qualified for a federal income tax deduction, (4) that the plan and insurance policy qualified under Section 412(i), (5) that the plan amounted to a "fully insured qualified

plan" under Section 412(i), (6) that the plan satisfied each requirement of Section 412(i), (7) that the employer's contribution qualified for a tax deduction, (8) that the plan allowed the participant to avoid taxation, (9) that the plaintiffs could eventually purchase the policy for the surrender value and report the surrender value as taxable income, and (10) that a reputable law firm opined that the plan was "more likely than not" a lawful plan. Additionally, the insurance policy emphasizes (1) that the plan is a Section 412(i) plan, (2) that the policy "is intended to qualify as part of a tax-qualified retirement plan or arrangement that meets the requirements of ... [Sections] 401 and 412(i)," and (3) that Pacific Life reserves the right to amend the policy to comply with changes in either the tax code or applicable regulations.

Relying on the defendants' statements, the plaintiffs purchased five policies, effective January 1, 2003. The plaintiffs paid premiums of more than $2.5 million ($500,-000.00 a year for five years) and claimed an income tax deduction for each payment. The defendants disclosed neither the risk associated with the plan nor the abusive nature of the plan nor the IRS's "refusal to recognize the purported tax benefit[ ] of this kind of plan funded by 'springing' cash value policies." Furthermore, the defendants failed, after the IRS guidance and regulations in 2004 and 2005, to contact the plaintiffs and warn the plaintiffs "of the full repercussions" of the IRS guidance, i.e. that the plaintiffs' plan had become illegal. In fact, on December 1, 2004, Haskell and Lombardi advised the plaintiffs in an e-mail that the plaintiffs could avoid the plan's becoming a "listed transaction" by filing a "Form 5330" and paying an excise tax. On May 25, 2005, Haskell and Lombardi sent another e-mail identifying "two choices for pulling the [i]nsurance plan [out] of the [Section

412(i) ] pension." Haskell and Lombardi suggested (1) a buyout using "outside money" and paying the "fair market value" of the policy or (2) a distribution of the policy for the policy's "fair market value" and the payment of both taxes on the distribution and a ten percent withdrawal penalty.

Accordingly, the plaintiffs continued to pay premiums until 2007, when the IRS contacted the plaintiffs and informed them that the policy failed to comply with Section 412(i)(3). After an IRS audit, the plaintiffs paid penalties and interest of more than $100,000.00. Together with the penalty and interest, the plaintiffs suffered damages (including legal and accounting fees) of over two million dollars. The plaintiffs sue (Doc. 30) and allege (1) breach of contract by Pacific Life, (2) fraud, (3) negligent misrepresentation, (4) breach of fiduciary duty, and (5) a violation of California Business and Professions Code Section 17200.

*Discussion*

1.  *Rule 9(b), Federal Rules of Civil Procedure, and the Plaintiffs' Claims of Fraud and Negligent Misrepresentation*

 ▆▆ Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A claim satisfies Rule 9(b) if supported by allegations describing:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made[;] ... (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same[;] ... (3)

the content of such statements and the manner in which they misled the plaintiff[;] and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001) (quoting *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997)); *Colonial Penn. Ins. Co. v. Value Rent–A–Car Inc.*, 814 F.Supp. 1084, 1093 (S.D.Fla. 1992) (finding that allegations identifying the purported statement, the speaker, the reason the statement was fraudulent, and the motivation for the statement satisfies Rule 9(b)). Because a negligent misrepresentation claim "sounds in fraud," Rule 9(b) applies. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir.1993); *Harrison Enter., Inc. v. Moran*, 1999 WL 1211753 (S.D.Fla.1999) (Lenard, J.).

> Because fair notice is "[p]erhaps the most basic consideration" underlying Rule 9(b), the plaintiff who pleads fraud must "reasonably notify the defendants of their purported role in the scheme." Therefore, in a case involving [more than one] defendant[ ] ... "the complaint should inform each defendant of the nature of his alleged participation in the fraud." "Rule 9(b) is not satisfied [if] the complaint vaguely attributes the alleged fraudulent statements to 'defendants.' "

*Brooks*, 116 F.3d at 1381 (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir.1994)) (citations omitted); *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir.2007).

 ▆▆ Both Pacific Life and Haskell assert (1) that Rule 9(b) applies to all of the plaintiffs' claims because each claim "sounds in fraud" and derives from the same allegations as the fraud claims[3] and

---

**3.** Neither Pacific Life nor Haskell cites per-    ' suasive precedent establishing that, if a claim

(2) that no claim satisfies Rule 9(b) because the plaintiffs allege neither the day of the alleged representations, nor the time of the alleged representations, nor the location of the alleged representations, nor the reason "why the representations were false" at the time, nor the identity of the speaker. Rather (according to Pacific Life and Haskell) the plaintiffs allege that the "defendants" generally misrepresented the legality of the plan and that the representations occurred both orally and in writing (without identifying the location of, or the document containing, the representation). The plaintiffs respond (Doc. 55) and assert that the complaint sufficiently alleges (1) Pacific Life's marketing and selling—through Pacific Life's agents, Haskell and Lombardi—the plan and insurance policies; (2) the "abusive" nature of the plan; (3) IRS guidance that "condemns key aspects of the scheme inherent in the abusive 412(i) plan" as early as 1989; (4) the role of each defendant in perpetrating the alleged fraud; (5) the representations attributable to each defendant; and (6) the location and manner of each statement. Additionally, the plaintiffs argue that "further detail is simply not necessary to give Pacific Life [and Haskell] 'sufficient notice of the acts complained so that [d]e-

fendants will be able to respond effectively.' "

In support of dismissal, Pacific Life cites *Zarrella v. Pacific Life Ins. Co.*, 755 F.Supp.2d 1218 (S.D.Fla.2010) (Cohn, J.) (*"Zarrella I "*), and *Zarrella v. Pacific Life Ins. Co.*, 755 F.Supp.2d 1231 (S.D.Fla. 2011) (Cohn, J.) (*"Zarrella II "*). *Zarrella* involves a claim similar to the claim in this action and successive motions to dismiss for failure to comply with Rule 9(b). *Zarrella I* finds that the complaint fails to identify the time and place of the alleged statements, the identity of the speaker, and "what information Pacific Life had or could have had in its possession to indicate that the statements were false when made." *Zarrella II* finds that the amended complaint suffers the same deficiency as the original complaint but grants the plaintiffs leave to file a second amended complaint. In both complaints, the *Zarrella* plaintiffs alleged that Pacific Life in 2003 "knew or should have known" that the plan failed to comply with Section 412(i) but "marketed and expressly touted" the plan's features, which the IRS in 2004 identified as "markers" of an "abusive 412(i) plan".

---

appears in the same complaint and derives from the same transaction as a fraud claim, the claim "sounds in fraud" and must satisfy Rule 9(b). *See, e.g., Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1468 (11th Cir.1986) (explaining that the plaintiffs conceded at oral argument that "they have no breach of contract claim that is not identical, at bottom, to the fraud claim...."); *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir.2003) ("To require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments, however, serves no ... reputation-preserving function, and would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a)") (finding that fraud is not an "essential element" of a claim under Section 17200, California Busi-

ness and Professions Code); *Llado–Carreno v. Guidant Corp.*, 2011 WL 705403, *5 (S.D.Fla. 2011) (applying Rule 9(b) to a claim under the Florida Deceptive and Unfair Trade Practices Act); *Zarrella v. Pacific Life Ins. Co.*, 755 F.Supp.2d 1218, 1222–23 (S.D.Fla.2010) ("Failure to satisfy Rule 9(b) cannot result in dismissal of the entire complaint, however, as Rule 9(b) only applies to claims based on fraud or mistake."); *Harrison Enter., Inc. v. Moran*, 1999 WL 1211753 (S.D.Fla.1999) (finding, based on vague allegations that fail to describe the alleged contract breached, that the "entire set of factual allegations 'sound in fraud,' and therefore must comply with [Rule 9(b)]."). Accordingly, this order applies Rule 9(b) to only the fraud and negligent misrepresentation claims.

In contrast, in this action the plaintiffs identify the alleged statements; the alleged speakers (Haskell and Lombardi as the "agents" of Pacific Life); the alleged form (i.e., by letter, by telephone, and in person); the alleged place (i.e., in a letter, in an application for insurance, during conversations with Haskell and Lombardi, during a meeting in Ft. Lauderdale); and the alleged motive. The plaintiffs identify the manner in which the statements mislead the plaintiffs and certain pre–2004 IRS guidance that purportedly "condemned" the type of plan that the defendants marketed and sold. Accordingly, under both *Ziemba* and *Brooks* the plaintiffs provide detail sufficient to satisfy Rule 9(b).

### 2. *Fraud and Negligent Misrepresentation*

■ Both Pacific Life and Haskell argue that the plaintiffs fail to state a claim for either fraud or negligent misrepresentation (1) because the claims depend upon a statement of opinion and a prediction of future events and (2) because the plaintiffs cannot demonstrate justifiable reliance. Specifically, the defendants argue (1) that the plaintiffs cannot show justifiable reliance on "alleged representations regarding how the IRS would treat the [Section] 412(i) plans in the future" [4] and (2) that the "alleged representations . . . are adequately covered or contradicted by the parties' contracting documents." In response, the plaintiffs argue (1) that a claim of fraud

requires no allegation of "justifiable reliance" [5] and (2) that the policy "illustrations" relied upon by Pacific Life are incorporated neither in the complaint nor in the contract between the plaintiffs and Pacific Life and, therefore, deserve no consideration on a motion to dismiss. [6]

■ To state a claim of fraud, a plaintiff must show (1) a false statement or an omission of material fact, (2) knowledge of the statement's falsity, (3) intent to induce reliance, and (4) injury resulting from the plaintiff's relying on the statement. *Ward v. Atlantic Sec. Bank,* 777 So.2d 1144, 1146 (Fla. 3d DCA 2001) (citing *Lance v. Wade,* 457 So.2d 1008, 1011 (Fla.1984)). A claim of negligent misrepresentation requires an allegation that:

> (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted in a party acting in justifiable reliance upon the misrepresentation.

*Rothis v. M & I Marshall & Isley Bank,* 2010 WL 3893960, *5 (M.D.Fla.2010) (quoting *Baggett v. Electricians Local 915 Credit Union,* 620 So.2d 784, 786 (Fla. 2d DCA 1993)).[7] "Neither an opinion nor a

---

**4.** In support of this argument, the defendants cite *Berry v. Indianapolis Life Ins. Co.,* 600 F.Supp.2d 805, 819 n. 19 (N.D.Tex.2009), which finds that "it is inherently unreasonable for any person to rely on a prediction of future IRS enactment, enforcement, or non-enforcement of the law by someone unaffiliated with the federal government."

**5.** *See Specialty Marine & Indus. Supplies, Inc. v. Venus,* 66 So.3d 306, 310, 2011 WL 479912, *3 (Fla. 1st DCA 2011) (distinguish-

ing between a fraudulent misrepresentation and a negligent misrepresentation claim).

**6.** An attachment to a motion to dismiss may support dismissal if the attachment is both central to the plaintiff's claim and undisputed. *Day v. Taylor,* 400 F.3d 1272, 1275–76 (11th Cir.2005).

**7.** Pacific Life asserts that the negligent misrepresentation claim fails because the plaintiffs fail to allege that Pacific Life owed the

promise of future action supports a claim of fraud or negligent misrepresentation." *Rothis*, 2010 WL 3893960 at *5. However, if " 'the person expressing the opinion is one having superior knowledge of the subject of the statement and the plaintiff can show that the . . . person knew or should have known from facts in his or her possession that the statement was false,' " an opinion on a future event may serve as the basis for a fraud claim. *Zarrella*, 755 F.Supp.2d at 1224–25.

■■■ In this instance, the plaintiffs' fraud and negligent misrepresentation claims depend upon the defendants' statement (on which the plaintiffs' allegedly relied) (1) that the insurance policy issued by Pacific Life provided a mechanism appropriate for funding a Section 412(i) plan, (2) that the policy provided a "permissible death benefit" under Section 412(i), (3) that the plaintiffs' contributions to the plan would qualify for a tax deduction, (4) that both the plan and policy complied with federal tax laws and regulations, and (5) that the plan constituted a "suitable" investment for the plaintiffs. Each statement amounts to an opinion or promise of future action and (generally) cannot serve as the basis for either a fraud or a negligent misrepresentation claim. However, in this instance, the plaintiffs allege that the defendants knew or should have known based on IRS guidance before 2004 that each statement was false. Therefore, the plaintiffs may rely on the defendants' alleged statements as the basis for a fraud claim.

On the other hand, to state a claim for negligent misrepresentation, the plaintiffs

must allege justifiable reliance. In moving to dismiss, the defendants rely on certain policy illustrations—expressly disclaiming assurances of tax compliance and advising the insured to seek legal counsel—to show that the plaintiffs cannot demonstrate justifiable reliance. However, the policy illustrations are disputed and therefore not susceptible to consideration on a motion to dismiss. Accordingly, at this stage of the action, the plaintiffs allege facts sufficient to state a claim for negligent misrepresentation.

### 3. Breach of Fiduciary Duty

Both Pacific Life and Haskell assert that the breach of fiduciary duty claim fails because the defendants never formed a fiduciary relation with the plaintiffs. The plaintiffs argue (1) that the plaintiffs "had no choice but to rely on Pacific Life" because Pacific Life reserved the right to amend a policy rider to comply with changes in the tax law and (2) that Haskell and Lombardi assumed the role of "money managers" for the plaintiffs and the plaintiffs' trust.

■■■ A fiduciary relation arises if "a 'relation of trust and confidence exists between the parties . . . [in which] confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused. . . .' " *Advisors Capital Inv.*, 2006 WL 1428490 at *3. Typically, no fiduciary relation exists between an insurer and an insured. *Hogan v. Provident Life & Acc. Ins. Co.*, 665 F.Supp.2d 1273, 1286 (M.D.Fla.2009) (Fawsett, J.) (citing *Time Ins. Co., Inc. v. Burger*, 712 So.2d 389, 391 (Fla.1998)).

plaintiffs a duty of care. However, neither *Levine v. Wyeth Inc.*, 684 F.Supp.2d 1338, 1347 (M.D.Fla.2010) (Covington, J.), nor *Zarrella*, 755 F.Supp.2d at 1242, nor *ZP No. 54 Ltd. P'ship v. Fidelity & Deposit Co.*, 917 So.2d 368, 374 (Fla. 5th DCA 2005), provides persuasive support for Pacific Life's argument

that a "duty" is a necessary element of a negligent misrepresentation claim. Rather, "in Florida, an action for negligent misrepresentation sounds in fraud rather than negligence." *Advisors Capital Inv., Inc. v. Cumberland Cas. & Sur. Co.*, 2006 WL 1428490, *3 (M.D.Fla.2006).

▮ In this instance, the plaintiffs sufficiently allege the existence of a fiduciary relation between the plaintiffs and Haskell, because the plaintiffs allegedly entrusted Haskell with the authority to act as the "money manager" for the plaintiffs and the plaintiffs' trust. However, the plaintiffs fail to sufficiently allege a fiduciary relation between the plaintiffs and Pacific Life. Pacific Life's reserving a right to amend a policy rider without more cannot substantiate a fiduciary relation between Pacific Life and the plaintiffs. Furthermore, Florida law typically recognizes no fiduciary relation between an insurer and an insured.

### 4. A Violation of California Business & Professions Code Section 17200

In moving to dismiss, Pacific Life and Haskell argue that the plaintiffs fail to state a violation of the California Business and Professions Code (the "California Business Code"). Additionally, Haskell argues that the plaintiffs "cannot overcome California's presumption against extraterritorial application of its statutes" and that the plaintiffs' allegations are conclusory. In response, the plaintiffs argue (1) that the complaint states a violation of the California Business Code and (2) that the plaintiffs provide allegations sufficient to overcome the presumption against extraterritorial application of the California Business Code.

▮ "Section 17200 of the California [Business Code] provides a remedy for injuries resulting from unfair competition, defined as 'any unlawful, unfair or fraudulent business act or practice.'" *Zarrella,* 755 F.Supp.2d at 1239. A non-resident cannot assert a claim under Section 17200 unless the alleged misconduct or injury occurred in California. *Churchill Village, L.L.C. v. Gen. Elec. Co.,* 169 F.Supp.2d 1119, 1126 (N.D.Cal.2000) (Patel, J.); *Zar-*

*rella,* 755 F.Supp.2d at 1239–40 (citing cases permitting a non-resident to sue based on an allegation that the wrongful conduct occurred in California). Section 17200 "borrows" from other state laws and renders a violation of a law, e.g., the Consumer Legal Remedies Act (Cal. Civ.Code § 1770, the "CLRA"), a violation of Section 17200. *Berryman v. Merit Prop. Mgmt., Inc.,* 152 Cal.App.4th 1544, 62 Cal.Rptr.3d 177, 185 (2007). In this instance, the plaintiffs allege a violation of the CLRA and False Advertising Law (Cal. Bus. & Prof. Code § 17500, the "FAL"). A violation of the CLRA must involve " 'the sale or lease of goods or services to a[ ] consumer' ". *Zarrella,* 755 F.Supp.2d at 1240 (quoting Cal. Civ.Code § 1770) (citing cases and finding that "[i]nsurance products are not 'goods or services' within the meaning of the CLRA."). An FAL claim must allege that "members of the public are likely to be deceived by an untrue or misleading advertisement."

▮ In this instance, the plaintiffs sufficiently allege misconduct that occurred in California. Pacific Life was (at the time the plaintiffs purchased the policies) a California corporation with a principal place of business in California and "wr[ote], produced, and ultimately sold" and executed the insurance policy that the plaintiffs purchased. At the time that Haskell (1) acted as an agent for Pacific Life in the writing, producing, and selling of the insurance policy and (2) conveyed representations about the nature of the 412(i) plan sold by the defendants, Haskell maintained an office in San Diego, California. However, because an "insurance product" is not a good or service within the meaning of the CLRA, the plaintiffs cannot state a claim under Section 17200 for a violation of the CLRA. *See Zarrella,* 755 F.Supp.2d at 1240. Additionally, as to the FAL claim, the plaintiffs allege that the

defendants disseminated a deceptive advertisement, i.e., the solicitation letter (Doc. 30–1), which marketed the benefits of the insurance plan offered by the defendants. However, the plaintiffs fail to provide sufficient factual allegations supporting the claim that "members of the public are likely to be deceived" by an advertisement sent to the plaintiffs. Accordingly, the plaintiffs fail to state a claim under Section 17200 for a violation of the FAL.

### 5. Breach of Contract

█ Pacific Life argues that the complaint fails to state a claim for breach of contract. To survive dismissal, a plaintiff must allege facts supporting " '(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach.' " *Zarrella,* 755 F.Supp.2d at 1241 (quoting *Textron Fin. Corp. v. Lentine Marine, Inc.,* 630 F.Supp.2d 1352, 1356 (S.D.Fla.2009)).

█ In this instance, Pacific Life argues that the complaint fails to state a claim because Pacific Life never promised compliance with Section 412(i) but instead stated that the policy "intended" to form part of a "tax qualified retirement plan" under Section 412(i). (Pacific Life relies in part on the policy illustrations, which are neither central nor undisputed and therefore not susceptible to consideration at this time.) Nonetheless, in alleging breach of contract, the plaintiffs assert (1) that Pacific Life (in the policy "rider") "contracted with the [p]laintiffs to provide life insurance policies … 'intended to qualify as part of a tax-qualified retirement plan … that meets the requirements of … [Sections] 401(a) and 412(i)' "; (2) that Pacific Life described the policy as a Section 412(i) plan; and (3) that Pacific Life "reserve[d] the right to amend th[e] rider to comply with any future changes in the Code or any [r]egulations." These allega-

tions without more fail to show that Pacific Life "contracted" to provide a plan that complied with Section 412(i). Rather, the allegations show merely that Pacific Life "intended" to provide a policy that satisfied the applicable tax requirement. The language of the rider appears precatory and indicative of no duty on the part of Pacific Life. Additionally, Pacific Life's "reservation" of a right falls short of a guarantee of legal compliance. Accordingly, the plaintiffs fail to state a claim for breach of contract.

### 6. Haskell's Personal Liability

█ Haskell argues that, as an agent for a disclosed principal, Haskell is immune from liability for the "debts or obligations of the principal". In response, the plaintiffs correctly assert that an agent is susceptible to personal liability for the agent's tortious conduct. *See Matheson Tri–Gas, Inc. v. Sheehan,* 2011 WL 1832708 (M.D.Fla.2011). Thus, Haskell's request for dismissal on this basis lacks merit.

### Conclusion

Accordingly, the motions (Docs. 45, 47) are **GRANTED IN PART** and **DENIED IN PART.** Count one (breach of contract) is **DISMISSED,** count four (breach of fiduciary duty) is **DISMISSED** as to Pacific Life Insurance Company, and counts five and six are **DISMISSED** as to both Pacific Life and Donald Haskell. The motions (Docs. 59, 60) for leave to reply are **DENIED AS MOOT.**

ORDERED.