**Larry ZARRELLA, and Zarrella Construction, Inc.,
Plaintiffs,**

v.

**PACIFIC LIFE INSURANCE COMPANY, Defendant.**

**Case No. 10–60754–Civ–WILLIAMS.**

United States District Court,
S.D. Florida.

Oct. 25, 2011.

John Marion Quaranta, Marguerite Clare Racher Snyder, Maria Victoria Olsz-ewska, Weil Quaranta, P.A., Ronald Peter Weil, Ronald Weil PA, Miami, FL, for Plaintiffs.

Enrique Daniel Aranal, Todd Matthew Fuller, Jorden Burt LLP, Miami, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

KATHLEEN M. WILLIAMS, District Judge.

This MATTER is before the Court on Defendants' Motion for Final Summary Judgment [D.E. 167], Plaintiffs' Response [D.E. 192], Defendant's Reply [D.E. 228], and Plaintiff's Corrected Sur–Reply [D.E. 239].

### I. BACKGROUND

The Internal Revenue Code ("IRC") offers employers a number of retirement plan options. At issue in this case is a plan established under § 412(i) of the Code.[1] Typically used by small businesses, a plan established under § 412(i) provides "defined benefits" to employees upon retirement. To establish such a plan, the employer drafts a plan document and creates a trust to receive and manage the money deposited by the employer to the fund the plan. A plan established under § 412(i) is unique in that it is funded exclusively by life insurance and annuity contracts, or a combination thereof. The employer pays tax deductible premiums on those contracts, and in turn the insurer guarantees the benefits promised under the plan. Due to this arrangement, § 412(i) plans are exempt from several requirements imposed on other defined benefit plans, such as a minimum funding

---

1. The Pension Protection Act of 2006, 120 Stat. 780, 820–826, Pub.L. No. 109–280, recodified § 412(i) at § 412(e)(3) without material alteration. For the sake of consistency, and to avoid confusion, the Court will refer to the pre-amendment version.

requirement. In addition to favorable tax deductions for the employer, § 412(i) plans minimize investment related risks and administrative expenses. [D.E. 168, Tab 8, Exh. 4, at 7–9].

To qualify under § 412(i), a plan must satisfy the following six statutory criteria:

(1) the plan is funded exclusively by the purchase of individual insurance contracts,

(2) such contracts provide for level annual premium payments to be paid extending not later than the retirement age for each individual participating in the plan, and commencing with the date the individual became a participant in the plan (or, in the case of an increase in benefits, commencing at the time such increase becomes effective),

(3) benefits provided by the plan are equal to the benefits provided under each contract at normal retirement age under the plan and are guaranteed by an insurance carrier (licensed under the laws of a State to do business with the plan) to the extent premiums have been paid,

(4) premiums payable for the plan year, and all prior plan years, under such contracts have been paid before lapse or there is reinstatement of the policy,

(5) no rights under such contracts have been subject to a security interest at any time during the plan year, and

(6) no policy loans are outstanding at any time during the plan year.

26 U.S.C. § 412(i). For present purposes, the most important criterion is § 412(i)(3)'s requirement that the "benefits provided by the plan [be] equal to the benefits provided under each [life insurance] contract at normal retirement age...." In order to ensure this equality, the plan administrator uses a formula to calculate the benefits that will be provided to an employee at retirement. That calculation then determines the amount of life insurance necessary to fund the plan. The ensuing equality between the plan benefits and the life insurance contracts ensures that the plan will be fully funded and that its benefits will be paid as promised. [D.E. 168, Tab 8, Exh. 4, at 4, 7, 10].

The Plaintiffs in this case are Larry Zarrella and Zarrella Construction Inc. (collectively "Zarrella"). Larry Zarrella is the sole owner of Zarrella Construction, a premier interior contractor in South Florida. [D.E. 166 ¶ 1; D.E. 193 ¶ 1; D.E. 168, Tab 1, Exh. 1]. In March 2003, Zarrella Construction purchased nine Flex XII life insurance policies from Defendant Pacific Life Insurance Company ("Pacific Life") for use in a § 412(i) plan. Larry Zarrella served as the trustee and administrator of the plan. Subsequently, in 2005, the IRS began a nationwide audit campaign targeting abusive § 412(i) plans. The IRS audited Zarrella's plan and concluded, among other things, that it failed to satisfy § 412(i)(3), because the value of the life insurance policies exceeded the benefits to be provided under the plan. [D.E. 197, Tab 1, Exh. A; *id.*, Tab 5, Exh. A, at unnumbered 2–3]. Zarrella suffered damages as a result of the audit. [*See* D.E. 197, Tab 1, Exh. 1].

Zarrella brought this lawsuit in May 2010. [D.E. 1]. Although Zarrella has consistently characterized this lawsuit as a class action [*see* D.E. 1, 34, 69], he represented at the Status Conference before this Court on September 28, 2011 that class certification has not been—and will not be—sought. [*See* D.E. 240]. Thus, the only Plaintiffs in this case are Larry Zarrella and Zarrella Construction. Zarrella has also brought a number of fraud and negligence claims throughout the life of this lawsuit. However, before this case was transferred to the undersigned [D.E. 227], United States District Judge James Cohn—in a series of three orders—ulti-

mately granted Pacific Life's motions to dismiss these claims, as well as a claim under the Employee Retirement Income Security Act. Only two claims survived Pacific Life's motions to dismiss: 1) Zarrella's claim for breach of contract; and 2) Zarrella's claim that Pacific Life violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200 *et seq.*, based on a predicate violation of California's False Advertising Law ("FAL"), § 17500. [*See* D.E. 27, 65, 185]. Pacific Life now moves for summary judgment on these two claims.

## II. DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And any such dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the Court considers the evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or others materials . . . ." Fed.R.Civ.P. 56(c)(1)(A). The Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir.2008) (quotation

marks and citations omitted). At the summary judgment stage, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## A. BREACH OF CONTRACT CLAIM

■ Under Florida law, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." [2] *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). The Parties in this case do not dispute the existence of a valid contract (the Flex XII Policy) or damages (though they do dispute their amount). Rather, they dispute whether there was a material breach of a contractual obligation.

■ Zarrella argues that Pacific Life breached its contractual obligation to provide life insurance policies suitable for use in a § 412(i) plan. Zarrella asserts that Pacific Life undertook this obligation in a § 412(i) Rider attached to the Flex XII Policy. He relies primarily on the introductory preamble to the Rider, which provides:

> This rider is an agreement between Pacific Life Insurance Company . . . and the trustee of the Benefit Plan ("Plan") which owns the Policy to which this rider is attached (the "Policy"), and is in accordance with Internal Revenue Code (the "Code") 412(i) and Treasury Regulation 1.412(i)–1(b)(2)(ii).

[D.E. 197, Tab 3; D.E. 192, at 6–7]. Zarrella contends that this provision amounts to an enforceable contractual obligation by Pacific Life to supply a policy "in accordance" with § 412(i). The Court disagrees. While not entirely clear, the Court reads the "in accordance" language

---

**2.** The Parties do not dispute that Florida law governs Zarrella's breach of contract claim.

of this provision to modify the Plan, not the Policy. In any event, even if the "in accordance" language modifies the Policy, Pacific Life correctly points out that this provision is merely a prefatory description of what the Rider is, namely an agreement between Pacific Life and the trustee of the § 412(i) plan. [D.E. 228, at 5]. It does not contractually obligate Pacific Life to undertake or perform any action. *Cf. Whetstone Candy Co., Inc. v. Kraft Foods, Inc.,* 351 F.3d 1067, 1074 (11th Cir.2003) (stating that " 'whereas' clauses are not binding," but rather constitute "merely prefatory recitations of the facts that lead the parties to enter the agreement") (citing *Johnson v. Johnson,* 725 So.2d 1209, 1212–13 (Fla.Dist.Ct.App.1999)).

Zarrella also relies on a paragraph in the Rider entitled, "Tax Status," which provides in pertinent part:

This rider and any Policy covered by it are intended to qualify as part of a tax-qualified retirement plan or arrangement that meets the requirements of Code Sec. 401(a) and 412(i) and any regulations relating to it that apply.

[D.E. 197, Tab 3 ¶ 5; D.E. 192 at 7 n.9]. Another court has recently considered this provision of the Rider and concluded that it does not constitute an enforceable contractual obligation. *Drilling Consultants, Inc. v. First Montauk Sec. Corp.,* 806 F.Supp.2d 1228, 1239, 2011 WL 3792408, at *8 (M.D.Fla. May 27, 2011) (concluding that this provision "show[s] merely that Pacific Life 'intended' to provide a policy that satisfied the applicable tax requirement. The language of the rider appears precatory and indicative of no duty on the part of Pacific Life.... Accordingly, the plaintiffs fail to state a claim for breach of contract.").

Nonetheless, even assuming *arguendo* that Pacific Life did undertake a contractual obligation to provide life insurance policies suitable for use in a § 412(i) plan,

Zarrella's breach of contract claim still fails. Zarrella argues that Pacific Life breached that obligation because the Internal Revenue Service ("IRS") concluded that Zarrella's plan violated the requirement in § 412(i)(3) that the benefits provided by the plan equal the benefits provided by the life insurance contracts. However, the record establishes that this violation was not caused by any incompatibility between the Flex XII Policy and § 412(i). Indeed, it is undisputed that, in accordance with § 412(i), the Flex XII Policy "provide[d] for level annual premium payments," Pacific Life "guaranteed" the "benefits provided by the plan," and Pacific Life was "licensed under the law of a State to do business." 26 U.S.C. § 412(i)(2)-(3); [D.E. 168, Tab 8, at 176–77; *id.,* Exh. 4, at 15–16]. Rather, Zarrella's plan violated § 412(i)(3)'s equality requirement because Zarrella purchased too much insurance and overfunded the plan. In other words, the violation was not due to any problem with the Policy itself, but rather to the amount of insurance purchased.

Significantly, the experts for both Parties agreed on this point. [D.E. 168, Tab 8, at 97, 101, 124–26, 195; *id.,* Exh. 4, at 3, 21; D.E. 168, Tab 9, at 118–20, 147–48, 201–02], Indeed, Zarrella's own expert testified as follows:

Q: [I]s it fair to say ... [that] the problem is not with the FLEX XII Policy itself but with the amount of insurance that was purchased. If a smaller amount of insurance was purchased and ... the amount of insurance purchased equaled the provided-for amount equal to the normal retirement benefit, there would be no problem with 412(i)(3)?

A: I think that's a fair statement....

Q: And just to be clear, you testified a few minutes ago that if the trustee or the plan administrator would

have purchased less insurance ... under the FLEX XII Policy, [then] ... they could have purchased an amount that matched the retirement benefits under the plan?

A: .... Yes, that really was the opinion I was rendering.

...

Q: So—but basically your opinion here is that too much insurance was purchased to properly fund the plan?

A: I think that's a fair statement, yes.

Q: Okay. And I think you testified earlier that if less insurance were purchased, then—

A: Right.

Q: —the use of the FLEX XII policies would be fine?

A: Correct.

Q: Would not violate 412(i)(3)?

A: Correct.

[D.E. 168, Tab 9, at 118–20, 147–48, 201–02]. Given the experts' agreement on this point, and the absence of any evidence to the contrary, this Court concludes there is no genuine issue of material fact as to whether the Policy was suitable for use in a § 412(i) plan.

Zarrella's remaining contentions are without merit. Zarrella attempts to show that Pacific Life played a role in designing

Zarrella's plan. [D.E. 192 at 9–11]. However, Zarrella does not explain how that alleged role has any bearing on the Flex XII Policy's suitability for use in a properly designed § 412(i) plan. Indeed, Zarrella does not even assert that, in designing the plan, Pacific Life determined the amount of insurance that Zarrella purchased and was therefore responsible for the § 412(i)(3) violation.[3]

▆ Zarrella also argues that Pacific Life never actually intended for its Flex XII Policy to be used in a § 412(i) plan, and it therefore breached a contractual obligation (expressed in the Rider) to provide a policy "intended to qualify as part" of a § 412(i) plan. [D.E. 197, Tab 3 ¶ 5; D.E. 192, at 11–13]. However, as Pacific Life points out, it is well-established that subjective intent is irrelevant in a breach of contract action. *See United States v. Blankenship*, 382 F.3d 1110, 1134 (11th Cir.2004) ("The enforceability of a contract depends on its objective representations rather than parties' subjective intentions."); *Gendzier v. Bielecki*, 97 So.2d 604, 608 (Fla.1957) ("The writing itself is the evidence of what they meant or intended by signing it."). Thus, Pacific Life's subjective intentions have no bearing on whether it materially breached a contractual obligation expressed in the Policy. In

---

**3.** In any event, Zarrella does not sufficiently explain how the evidence upon which he relies supports his assertion that Pacific Life designed the plan. For example, Zarrella quotes at length from the deposition of Pacific Life Regional Manager Roderick Hansen [D.E. 192 at 9–10], but the testimony quoted demonstrates only that Pacific Life shared information about its products with the third party administrators ("TPA") in order to allow the TPAs (not Pacific Life) to design a plan. And Hansen specifically testified that Pacific Life shared its policy information with TPAs "so they [TPAs] could design what product *amounts* would be needed to fund their plan the way they wanted to design it." [D.E. 197, Tab 3, at 39 (emphasis added)].

Zarrella also relies heavily on the assertion that the Graduate Group designed the plan, and that Pacific Life authorized the Graduate Group to sell the Flex XII Policy and paid the Graduate Group sales commissions. Zarrella appears to argue that this relationship supports an inference that Pacific Life played a role in designing the plan; but Zarrella's citations to the record do not lead to evidence supporting that proposition. [*See* D.E. 192 at 11; D.E. 193 ¶¶ 3, 4, 6, 10, 14–17, 21–22]. For example, Zarrella relies heavily on paragraph 17 in his statement of material facts to support this assertion, but that paragraph indicates only that the Graduate Group (not Pacific Life) designed the plan. [D.E. 193 ¶¶ 4, 10, 14–17].

this respect, Zarrella's argument appears to be an attempt to circumvent this Court's previous dismissal of his fraud claims, as two of Zarrella's fraud claims—which have previously been dismissed—relied on this very language in the Rider. [*See* D.E. 69 ¶¶ 44–57].

 Finally, Zarrella points out that the IRS concluded that the plan "engaged in a Listed Transaction as defined in Revenue Ruling 2004–20." [D.E. 197, Tab. 1, Exh. A; D.E. 192, at 8]. However, Revenue Ruling 2004–20 simply declared as "listed transactions" those transactions where "the employer has deducted amounts used to pay premiums on a life insurance contract for a participant with a death benefit under the contract that exceeds the participant's death benefit under the plan by more than $100,000." Rev. Rul.2004–20, at 8, *available at http://www.irs.gov/pub/irs-utl/rr–04–20.pdf.* A "listed transaction" is subject to mandatory disclosure to the IRS, but it has no effect on a plan's qualification under § 412(i). Thus, the IRS' conclusion that Zarrella's plan engaged in a listed transaction did not disqualify the plan under § 412(i), much less cast doubt on the Flex XII Policy's suitability for use in a § 412(i) plan. For these reasons, Pacific Life is entitled to summary judgment on Zarrella's breach of contract claim.

## B. CALIFORNIA FALSE ADVERTISING LAW CLAIM

 California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." *Berryman v. Merit Prop. Mgmt., Inc.,* 152 Cal.App.4th 1544, 1554, 62 Cal.Rptr.3d 177, 185 (Cal.Ct.App.2007); *see* Cal. Bus. & Prof.Code § 17200. Zarrella brings his UCL claim under the "unlawful" prong,

which requires a predicate violation of another law. *Id.;* [D.E. 69 ¶¶ 72–73]. In this case, Zarrella bases his remaining UCL claim on a predicate violation of California's False Advertising Law ("FAL"). Cal. Bus. & Prof.Code § 17500; [D.E. 69 ¶ 74].

 Under California's FAL, "it is unlawful to make and disseminate any statement that is 'untrue or misleading, and which is known, or by the exercise of reasonable care should be known, to be untrue or misleading.'" *Fraker v. Bayer Corp.,* 2009 WL 5865687, at *6 (E.D.Cal. Oct. 6, 2009) (quoting § 17500). "A private plaintiff bears the burden of producing evidence and the burden of proof" to "show that members of the public are likely to be deceived. A 'reasonable consumer' standard applies." *Colgan v. Leatherman Tool Group, Inc.,* 135 Cal.App.4th 663, 682, 38 Cal.Rptr.3d 36, 48 (Cal.Ct. App.2006); *see also McCann v. Lucky Money, Inc.,* 129 Cal.App.4th 1382, 1388, 29 Cal.Rptr.3d 437, 441 (Cal.Ct.App.2005). However, "a private individual has standing to bring a UCL action only if he or she 'has suffered injury in fact and has lost money or property as a result of the unfair competition.'" *Troyk v. Farmers Group, Inc.,* 171 Cal.App.4th 1305, 1339, 90 Cal. Rptr.3d 589, 617 (Cal.Ct.App.2009) (quoting § 17204).

 In this case, Zarrella does not clearly identify the statements or advertisements by Pacific Life that he claims were false or misleading and that caused him actual injury. [*See* D.E. 192 at 13–20; D.E. 239]. Nonetheless, it appears that the gravamen of his FAL claim is that the Flex XII Policy itself was misleading because it falsely promised compliance with § 412(i).[4] [*See* D.E. 192 at 17, 20; D.E.

---

**4.** The Court assumes *arguendo* that a contract can constitute a statement or advertisement for purposes of the FAL.

239 at 5 n.8]. However, it is not clear whether Zarrella is attempting to assert that the Policy falsely promised that the Policy itself complied with § 412(i) or that the plan would comply with § 412(i).[5]

To the extent Zarrella is making the former assertion, the Court's analysis above on Zarrella's breach of contract claim explains that any such promise was not false or misleading. Again, this is so because Zarrella has not identified any genuine issue of material fact calling into doubt the Policy's suitability for use in a § 412(i) plan.

To the extent Zarrella is asserting that the Policy falsely promised that the plan would comply with § 412(i), Zarrella has not identified any such promise. To the contrary, the Policy contains numerous disclosures emphasizing Zarrella's responsibility to ensure that its plan complied with § 412(i), disclaiming any such responsibility for Pacific Life, and highlighting the risks associated with § 412(i) plans. A few examples are re-printed below:

> Pacific Life ("PL") does not provide Plan Administrative Services, either directly or indirectly, whether fiduciary or otherwise. Pl.'s role is limited solely to providing you with, and servicing, your life insurance policies and annuity contracts.
>
> . . .
>
> Life insurance owned by a qualified plan is subject to complex income and estate tax rules. Assistance of private legal counsel is required to prepare all documents and to provide legal or tax advice when implementing this or any similar arrangement. Pacific Life does not provide such advice.
>
> . . .

> Neither Pacific Life nor its representatives offer legal or tax advice. Consult your attorney or tax advisory for complete up-to-date information concerning federal and state laws in this area.
>
> . . .
>
> Pacific Life makes no determination or representation as to whether the Flex XII . . . contracts . . . automatically exempts a qualified plan from minimum funding requirements or meets any other requirements of IRC Sec. 412(i). Any such determination, like all other qualified plan design and administration issues, must be made by the qualified plan administrator, plan trustee, or the plan's other legal or tax advisors.
>
> . . .
>
> Please understand that Pacific Life has not made a determination that this plan achieves any specific tax or other objectives. Further, Pacific Life is not acting as administrator, fiduciary, or trustee of your 412(i) plan for any purpose, nor will Pacific Life supervise any plan administrator, trustee, or fiduciary in the discharge of his or her obligations. Pacific Life's role is limited solely to providing you with, and servicing, your life insurance policies. Accordingly, it is important that you speak with your independent tax/legal advisors before you complete the purchase of the policy and go forward with your plan.

[D.E. 168, Tab 1, Exh. 2].

Moreover, the only § 412(i) non-compliance to allegedly injure Zarrella was the plan's failure to comply with § 412(i)(3)'s equality requirement. In this respect, the very Rider upon which Zarrella relies in this case makes it clear that Zarrella, as

---

**5.** The FAL allegations in Zarrella's second amended complaint do not help clarify Zarrella's claim, which read in their entirety: "Pacific Life's dissemination of uniformly deceptive advertisements and statements, in- cluding the failure to disclose material facts regarding the nature of their insurance policies, violates California Business and Professions Code § 17500, *et seq.*" [D.E. 69 ¶ 74].

the owner and administrator of the Policy, was responsible for ensuring compliance with § 412(i)(3). The first paragraph of the Rider informs Zarrella that "[t]he policy is designed to fund the benefits you report to us [Pacific Life]." [D.E. 197, Tab 3 ¶ 1]. The second paragraph instructs Zarrella that it "need[s] to tell [Pacific Life] about any possible over-funding;" and, that in the absence of such notice, Pacific Life will "assume that each Insured's accrued Benefits as of any date prior to the Retirement Date that are being funded with the Policies ... are not less than the [value] of such Policies...." [*Id.* ¶ 2]. The third paragraph then goes on to provide that, if Zarrella "notif[ies] [Pacific Life] of over-funding, [Pacific Life] will make adjustments." [*Id.* ¶ 3]. Thus, Pacific Life specifically informed Zarrella that it was the latter's responsibility to ensure compliance with § 412(i)(3) and inform Pacific Life of any possible overfunding.[6] This makes sense because, as the owner and administrator of the plan, Zarrella was responsible for determining the benefits to be provided under the plan and obtaining the corresponding amount of insurance necessary to fund (but not overfund) the plan. [*Id.*, Tab 8, Exh. 4, at 17–18].

Zarrella's remaining assertions do not establish any genuine issue of fact material to an FAL Claim. For example, Zarrella argues that Pacific Life failed to disclose IRS concerns about § 412(i) plans. [D.E. 192 at 13–14, 17]. Zarrella particularly refers only to warnings issued at industry conferences by IRS regulator James Hol-

land. [*Id.* at 14]. But Zarrella asserts that Holland merely "warned that investors and promoters be wary of schemes which promoted huge tax savings under the guise of selling insurance policies for use in 412(i) plans...." [*Id.*]. Zarrella does not identify any specific warnings issued by the IRS, assert that Pacific Life failed to disclose such warnings, or explain how Zarrella was injured as a result. More importantly, the Policy fully disclosed that it was Zarrella's responsibility to consult independent tax and legal advisors. And both the Policy and the Rider expressly warned Zarrella about § 412(i)(3)'s equality requirement and the risk of overfunding. In this respect, it is worth reiterating that the only § 412(i) non-compliance to allegedly injure Zarrella was the plan's violation of § 412(i)(3)'s equality requirement—a requirement that, again, was fully disclosed by Pacific Life and allocated to Zarrella's sphere of responsibility.

Zarrella similarly argues that Pacific Life ignored the warnings of its former President Glenn Schafer. [D.E. 192, at 13, 16]. To the extent Zarrella is attempting to argue that ignoring Schafer's warnings rendered the Policy false or misleading, that argument fails. Schafer testified only that he had expressed concerns about whether, if an employee decided to purchase the life insurance policy from the trust, the cash surrender value would equal the fair market value; if not, it could result in adverse tax consequences to the employee. [D.E. 224, Tab 11, at 17–20. 32–33]. Such concerns have no relevance to this case because the Zarrella employ-

---

6. The Policy Illustrations also informed Zarrella about § 412(i)(3)'s equality requirement and warned about the risk of overfunding. [D.E. 168, Tab 1, Exh. 2, Policy Illustrations, at 6–8]. Tellingly, Zarrella's own plan document reflects these disclosures. That document contains an "Insurer's Protective Clause," providing that "an insurer which issues any Contracts hereunder shall not have

any responsibility for the validity of this Plan or for the tax or legal aspects of this Plan." [D.E. 168, Tab 5, Exh. 13, at 004599]. And the plan document provides that Zarrella is responsible for "determin[ing] the *size* and type of any Contract purchased from any insurer...." [*Id.* at 004561–62 (emphasis added)].

ees never purchased life insurance policies from the trust. [D.E. 228, at 14]. Moreover, Schafer did not express concerns that the Flex XII Policy was not suitable for use in a § 412(i) plan; to the contrary, he testified that the Policy "was a perfectly fine product to be in [a] section ... 412(i) [plan]...." [*Id.* at 19].

Zarrella also relies heavily on Pacific Life's purported withdrawal of the Flex XII Policy shortly after Zarrella purchased it. [D.E. 192 at 15, 17; D.E. 239 at 5]. Again, to the extent Zarrella argues that this rendered the Policy false or misleading, that argument fails. The record reflects that Pacific Life did not "withdraw" the Flex XII Policy, but rather cautiously instituted an internal policy providing that it would no longer accept applications where the § 412(i) plan would be funded by more than 60% life insurance contracts. [D.E. 197, Tab 14, Exhs. 1, 50]. Pacific Life's shift in policy does not retroactively render the Flex XII Policy false or misleading. Indeed, the Flex XII Policy sold to Zarrella specifically disclosed that "certain risks [including overfunding] may increase for 412(i) plans where the percentage of contribution allocate to life insurance exceeds fifty percent of the total annual plan contribution." [D.E. 168, Tab 1, Exh. 2, Policy Illustrations, at 7–8].[7]

Zarrella makes a number of additional assertions that are untethered to any specific statement or advertisement made by Pacific Life. For example, Zarrella reiterates his assertion that Pacific Life was the chief "architect" of the plan [D.E. 192, at 19–20]; but, as noted above, he has failed to produce sufficient evidence establishing that fact. Zarrella asserts that Craig Richman, Zarrella's financial consultant, relied on the Graduate Group's representations that the plan met IRS guidelines [D.E. 192, at 18]; but Zarrella does not identify any statement made by Pacific Life, and the Graduate Group is not a Defendant. And Zarrella asserts that Pacific Life "advised its producers on the supposed tax advantages of *plans* that would incorporate its policies" [*id.* at 19]; but Zarrella does not explain how such a statement, which was not made to Zarrella, was false or misleading. In short, Zarrella does not sufficiently explain how these assertions make out an FAL claim against Pacific Life; he does not identify specific statements or advertisements made by Pacific Life, explain how they were false or misleading, and describe the injury that resulted. Accordingly, Pacific Life is entitled to summary judgment on this claim.

## III. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Pacific Life's motion for final summary judgment. All pending motions are **DENIED AS MOOT.** The Clerk is directed to **CLOSE** this case.

---

7. Relatedly, Zarrella quotes from a letter written to Pacific Life in another case to show that Pacific Life stated that a § 412(i) plan funded by 100% life insurance "met the letter of the tax code." [D.E. 192 at 19; D.E. 197, Tab. 19]. However, this letter does not show that Pacific Life ever made such a statement to Zarrella, and in any event Zarrella does not explain how such a statement would have either been false or misleading or resulted in actual injury.