Filed 6/21/24  Vasquez v. National Default Servicing Corp. CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RAUL VASQUEZ,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>NATIONAL DEFAULT SERVICING CORPORATION,<br><br>     Defendant and Respondent. | A167590<br><br>(San Francisco City & County Super. Ct. No. CGC17559683) |

Plaintiff Raul Vasquez sued National Default Servicing Corporation (NDSC), Select Portfolio Servicing, Inc. (SPS), and U.S. Bank, N.A. (U.S. Bank) (collectively defendants) alleging they violated the Homeowner Bill of Rights (HBOR; Civ. Code, § 2923.4 et seq.)[1] and the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.) while processing plaintiff's application for a loan modification.  In a prior appeal, we reversed a judgment for defendants after the trial court sustained their demurrer without leave to amend and remanded for further proceedings.  (*Vasquez v. Nat'l Default Servicing Corp.* (July 12, 2021, A157284) [nonpub. opn.] (*Vasquez*).)

---

[1]      Further unspecified statutory references are to the Civil Code.

In this second appeal, plaintiff challenges the trial court's factual and legal findings after a two-day bench trial. Plaintiff contends the court erred in concluding his loan modification application was not "complete" so as to trigger the protections against "dual tracking" under section 2923.6. Plaintiff further argues the court erroneously dismissed his UCL claim upon concluding that plaintiff did not prove "*unlawful*" conduct, without giving him the opportunity to prove defendants' violation of the separate "*unfair*" prong of the UCL. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. General Timeline of Events

In 2000, plaintiff purchased property located on Thomas Avenue in San Francisco (the subject property). He obtained a loan secured by a deed of trust on the subject property. The loan was eventually securitized and sold to a trust, and the trustee was defendant U.S. Bank.

In 2008, plaintiff defaulted on the loan.

In 2012, defendant SPS began servicing plaintiff's loan.

In 2014, NDSC, as trustee for SPS, recorded a notice of default.

In October 2015, plaintiff submitted an application for mortgage assistance under the federal Making Home Affordable Program. From November 2015 until April 2017, the application remained open while SPS communicated with plaintiff through his attorney, Marc Voisenat.

In April 2017, NDSC recorded a notice of trustee's sale of the subject property. The house was eventually sold at a foreclosure sale in May 2017, for a credit bid by U.S. Bank of $1,028,357.69. The total amount of unpaid debt on the loan at the time of sale was $1,030,250.62.

2

**B. The Lawsuit**

In June 2017, plaintiff filed the instant action alleging five causes of action against defendants for: (1) violation of preforeclosure contact requirements under section 2923.55; (2) violation of the dual tracking protections of section 2923.6; (3) violation of the "single point of contact" (SPOC) requirement of section 2923.7; (4) declaratory relief pursuant to section 2924.12; and (5) injunctive relief and restitution under the UCL based on the "acts and omissions of the defendants" alleged throughout the operative complaint.  After the trial court sustained defendants' demurrer to the complaint, only the second, third, and fifth causes of action remained. (*Vasquez*, *supra*, (July 12, 2021, A157284) [nonpub. opn.].)

In November 2018, plaintiff filed a supplemental complaint asserting a claim for declaratory relief, and the trial court sustained defendants' demurrer to the supplemental complaint without leave to amend.  (*Vasquez*, *supra*, (July 12, 2021, A157284) [nonpub. opn.].)  Then, finding that the supplemental complaint superseded the original complaint, the court dismissed the entire action. (*Ibid*.)  In *Vasquez*, we reversed the dismissal of the entire action, finding the supplemental complaint did not replace the original complaint, and remanded for further proceedings.  (*Ibid*.)

**C. Bench Trial**

Plaintiff's claims under sections 2923.6 and 2923.7 of the HBOR and the UCL proceeded to a bench trial.  We now summarize the relevant evidence and testimony.

In an October 2015 application for mortgage assistance, plaintiff disclosed that he had a pending Chapter 13 bankruptcy petition.  Plaintiff authorized his attorney, Voisenat, to discuss plaintiff's loan directly with SPS.

3

On November 13, 2015, SPS sent Voisenat a "**REQUIRED INFORMATION NOTICE**" indicating that plaintiff's request for mortgage assistance was "incomplete" due to "the missing Required Information shown on the document attached this letter."  SPS stated that if it did not receive the required information on or before January 12, 2016, "we may be unable to evaluate your application and foreclosure actions will resume or may be initiated."

The list of missing information identified the following documents:  a request for mortgage assistance (RMA)/hardship affidavit; an IRS Form 4506T; a copy of the most recent federal tax return; income documentation, such as the two most recent pay stubs; copies of the two most recent payments evidencing receipt of rental income "such as a bank statement or canceled check"; documentation for other types of income, such as social security income, insurance benefit income, disability income, pension income, public assistance income, unemployment income, alimony, and child support; bank statements for customers with checking and savings accounts; and proof of occupancy of the subject property as the primary residence.

On November 19, 2015, SPS sent another required information notice to Voisenat indicating that "the submitted documentation is insufficient or additional information is needed as outlined below" before the January 12, 2016 expiration date.  The letter listed the following required documents:  an RMA/hardship affidavit; a signed copy of the most recently filed federal tax return; and income documentation, including "bank statements for verification of receipt of income."

For the next several months, SPS sent numerous required information notices to plaintiff's attorney, identifying missing documentation and extending the deadlines for plaintiff to comply.[2]

At trial, the court admitted into evidence SPS's contact history report for plaintiff's loan. SPS's litigation director, Patrick Pittman, testified that all contacts between SPS and a borrower were logged into the contact history report for plaintiff's loan. According to that report, on March 28, 2016, an SPS employee recorded a customer contact with the following remarks: "Received bank statement, however, unable to determine Rental deposits. Need two most recent, consecutive bank statements less than 90 days with all pages showing proof of deposit for Rental Income. Please have borrower circle these deposits. Copies of front and back of Canceled Checks are acceptable as well. – receipts are not acceptable."

---

[2]     On December 16, 2015, SPS requested that Voisenat provide a copy of plaintiff's most recently filed federal tax return and copies of his three most recent bank statements, with a new expiration date of January 15, 2016. On December 18, 2015, SPS requested a profit and loss statement and copies of the three most recent bank statements for plaintiff's bank accounts, with a new expiration date of January 17, 2016. On February 10, 2016, SPS again informed plaintiff's attorney that a profit and loss statement and bank statements were needed by March 11, 2016, to complete the application. Thereafter, SPS repeated its requests for: bank statements on February 22, 2016, with an expiration date of March 23, 2016, February 24, 2016, with an expiration date of March 25, 2016, March 29, 2016, with an expiration date of April 28, 2016, and May 12, 2016, with an expiration date of June 11, 2016. On June 1, 2016, SPS again requested an RMA/hardship affidavit, with an expiration date of July 1, 2016. On June 23, 2016, SPS again requested a profit and loss statement, with an expiration date of July 23, 2016. On August 25, 2016, SPS requested rental income documentation, with an expiration date of September 24, 2016. On September 7, 2016, SPS again requested bank statements, with an expiration date of October 7, 2016.

Plaintiff was asked at trial whether he had any documented proof that he submitted two consecutive months of rental income verification to SPS. Plaintiff testified, "Well, when they requested it, we submitted it," but he acknowledged he did not have any documentation "with me." Meanwhile, Pittman testified he went through the contact history report for plaintiff's loan, as well as plaintiff's entire loan resolution file, and saw no indication that plaintiff or his attorney provided verification of two consecutive months of rental income.

Meanwhile, SPS separately requested documentation from plaintiff through the bankruptcy court's Mortgage Modification Mediation (MMM) program. SPS followed up with Voisenat regarding the requested documentation on various dates in April and May 2016, but plaintiff did not supply all of the requested documents. At a bankruptcy mediation in June 2016, Voisenat advised SPS that plaintiff's financial situation had significantly changed, requiring plaintiff to submit new documentation in support of his loan modification application. U.S. Bank eventually filed a motion in the bankruptcy court to vacate the order referring the parties to the MMM program due to plaintiff's "failure to timely and fully respond to U.S. Bank's requests for additional documentation." The bankruptcy court granted the motion in October 2016.

SPS nevertheless kept plaintiff's application open and continued to give him opportunities to submit documentation. On February 2, 2017, SPS's bankruptcy attorney, Daniel Fujimoto, informed Voisenat that SPS still needed clarification on rental agreements from plaintiff's tenants and "bank statements with rental deposit circled for their review." Fujimoto advised that plaintiff would have "30 days from today to submit the above information needed to start the loan mod review." On February 15, 2017,

6

Voisenat told Fujimoto that plaintiff's "bank closed his account without notice and will not give him any documents. . . . The debtor wants to know if he can deposit his money into his son's account and send you those bank statements."[3] Fujimoto forwarded the request to SPS and then provided SPS's response as follows: "After reviewing the account, [w]e cannot take his sons [sic] bank statements they have to be in the debtors [sic] name. Can the debtor open a new checking account and start depositing the money in the new account? If not he will have the rental money sent to him in money orders and then copy the front and bank [sic] and send them in that way."

Plaintiff did not submit documents verifying his rental income by March 4, 2017, but SPS did not yet close the application. On April 7, 2017, Voisenat emailed to Fujimoto "copies of money orders representing the monthly rent except for one renter who pays on the 28th of this month." The attachments showed copies of the front sides of seven money orders. At trial, Pittman testified that this submission did not satisfy SPS's rental income verification requirement for several reasons: (1) the documents provided verification of rental income for only one month, not two consecutive months; (2) there were no copies of the back sides of the money orders; (3) the dates on five of the seven money orders were not legible; and (4) as Voisenat acknowledged, one of the tenants did not pay their rent until the end of the month, so there was no money order for that tenant. Pittman testified he never received the required verification of two consecutive months of rental income from plaintiff.

---

[3]    In March 2017, Voisenat forwarded Fujimoto a letter from a different attorney representing plaintiff (H. Nelson Meeks) stating that due to a report by plaintiff's bank "inaccurately" accusing him of check fraud, plaintiff "will not be able to open a bank account."

On April 10, 2017, NDSC recorded a notice of trustee's sale for the subject property.

On April 12, 2017, SPS informed plaintiff in writing that his mortgage assistance application was closed due to plaintiff's failure to submit the required documents within the specified timeline.

On May 4, 2017, Voisenat sent SPS copies of the same money orders he previously submitted. The following day, SPS sent a letter to Voisenat reiterating SPS's position that plaintiff's application was incomplete because he did not submit the required documents, and advising that the foreclosure sale was set for May 15, 2017. Pittman testified that SPS received no new information in response to its May 5 letter.

**D. Statement of Decision**

In its statement of decision, the trial court made the following findings: (1) the dual tracking protections under section 2923.6 were unavailable to plaintiff because he did not provide " 'all documents required by the mortgage servicer,' " and therefore, his loan modification application was never completed; (2) there was no material violation of section 2923.7 because there was "no evidence that issues relating to a SPOC obligation affected any aspect of [plaintiff's] loan modification application"; (3) plaintiff suffered no damages because he had no equity in the subject property and offered no evidence of loss of rents or other economic injury; and (4) there was no violation of the UCL because there was no predicate violation of the HBOR. The court entered judgment in favor of defendants, and this appeal followed.

## DISCUSSION

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact.

8

[Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).) "It is not our role as a reviewing court to reweigh the evidence or to assess witness credibility. [Citation.] 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' [Citation.] Specifically, '[u]nder the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision.' " (*Ibid*.)

### A. Waived Issues

As a threshold matter, defendants contend plaintiff has forfeited any challenges to the trial court's findings that (1) there was no material SPOC violation and (2) plaintiff suffered no damages. We agree. Appellate review " ' "is limited to issues which have been adequately raised and supported in [the appellant's opening] brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned." ' " (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555.) Here, plaintiff raises cogent legal arguments only as to the trial court's findings on the dual tracking violation claim and the UCL claim.[4]

---

[4] In summarizing the trial court's statement of decision, plaintiff remarks that the court found no SPOC violation "[a]lthough defendant's [*sic*] provided [plaintiff] with five different 'single points of contact[.]' " This does not constitute a cogent argument, supported by citations to the record and legal authority, to support a claim of error on the SPOC requirement of section 2923.7. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.)

9

Accordingly, we limit our review to these issues and conclude plaintiff has forfeited any other challenges to the trial court's findings in its statement of decision.

## B. Dual Tracking

The HBOR "was enacted 'to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.' [Citation.] Among other things, HBOR prohibits 'dual tracking,' which occurs when a bank forecloses on a loan while negotiating with the borrower to avoid foreclosure. [Citation.] HBOR provides for injunctive relief for statutory violations that occur prior to foreclosure [citation], and monetary damages when the borrower seeks relief for violations after the foreclosure sale has occurred [citation]." (*Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272.)

Section 2923.6's dual tracking provision states in pertinent part: "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer at least five business days before a scheduled foreclosure sale, a mortgage servicer . . . shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." (§ 2923.6, subd. (c).) "For purposes of this section, an application shall be deemed 'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." (§ 2923.6, subd. (h).)

Here, substantial evidence supports the trial court's finding that plaintiff's mortgage assistance application was never completed. As reflected

in SPS's contact history report for plaintiff's loan, Pittman's supporting testimony, and the written communications between SPS and plaintiff, including the numerous required information notices sent to plaintiff's attorney between November 2015 and April 2017, plaintiff's application was missing documentation necessary for processing, including verification of his rental income for two consecutive months. Conversely, plaintiff's testimony that he provided all requested documentation to his attorney to be forwarded to SPS had no supporting documentation. On this record, we may comfortably defer to the court's credibility finding and resolution of this disputed question of fact. (*Thompson*, *supra*, 6 Cal.App.5th at p. 981.)

We additionally observe that plaintiff does not challenge the reasonableness of the timeframes specified by SPS for submission of the required documentation. (§ 2923.6, subd. (h).) Notably, the record amply supports the conclusion that SPS reasonably provided plaintiff with multiple opportunities and extensions over a 17-month period to submit the requested materials. On this record, the trial court could reasonably find that plaintiff did not submit a "complete application" "within the reasonable timeframes specified by the mortgage servicer," which was a necessary condition under section 2923.6 to prevent defendants from commencing foreclosure proceedings. (§ 2923.6, subds. (c), (h).)

Plaintiff's arguments to the contrary are without merit. Starting from the premise that the intent of the HBOR is to require lenders to deal reasonably with borrowers, plaintiff contends SPS unreasonably required him to fulfill requirements he could not satisfy because he did not have a bank account. Plaintiff contends SPS was required to "provide accommodations where an individual makes reasonable efforts to obtain a loan modification." But as the trial court recognized, SPS did in fact offer an

11

"accommodation to enable [plaintiff] to provide substitute documents." In lieu of bank statements, SPS agreed to accept copies of the fronts and backs of money orders for all rental income plaintiff received over two consecutive months. The court found that plaintiff failed to satisfy this alternative arrangement for verifying his rental income, and substantial evidence supports this finding, as the copies of the seven money orders forwarded by Voisenat did not include the back sides of the money orders, legible dates, and all rental income received.

Plaintiff argues the accommodation offer relayed by Fujimoto to Voisenat in February 2017 was ineffective because Fujimoto did not explicitly state that SPS was waiving its requirement that plaintiff provide bank statements, and a month later, SPS sent a letter to Voisenat requesting plaintiff's bank statements. We again are unpersuaded. The trial court could reasonably infer from the context of the email communications between Fujimoto and Voisenat that the purpose of the accommodation offer was to provide a workaround for plaintiff's lack of a bank account. That SPS later requested bank statements on March 20, 2017, does not compel the conclusion that the accommodation offer was "undone" as plaintiff maintains. Rather, the court could reasonably conclude SPS was providing plaintiff with various alternative methods to verify his rental income. Indeed, it appears plaintiff and his attorney did not believe the March 20 letter rescinded the accommodation offer, as Voisent attempted to comply by emailing Fujimoto copies of money orders in April 2017.

Plaintiff further contends SPS committed illegal dual tracking by noticing the trustee's sale in April 2017. For this contention, plaintiff relies on the circumstance that, around that same time, an attorney for SPS told the bankruptcy court that SPS was " 'processing' " plaintiff's application and

12

indicated the matter was still " 'pending.' " According to plaintiff, the term "pending" meant the matter was "awaiting a decision," and section 2923.6, subdivision (c), prohibits a lender from taking steps to foreclose while a loan modification application is "pending." But plaintiff's interpretation of the statute is incomplete, as section 2923.6, subdivision (c), explicitly states that foreclosure proceedings are prohibited "while the *completed* first lien loan modification is pending." (Italics added.) If, as plaintiff advocates, foreclosure proceedings are prohibited while an *incomplete* application is pending, that would allow a borrower to forestall foreclosure by withholding documents necessary for the lender or loan servicer to process the application. That cannot be what the Legislature intended for the dual tracking protections of section 2923.6.

Plaintiff further argues that because some of his renters paid him in cash, it was impossible for him to provide copies of those payments. In support, he cites a portion of the trial transcript in which he generally testified that his tenants paid him "sometimes cash, sometimes money orders." But we see no indication in the record that plaintiff or Voisenat told SPS that rental income verification was impossible due to rent payments having been tendered in cash. To the contrary, in April 2017, Voisenat forwarded the copies of seven money orders to Fujimoto and stated that documentation of payment from "one renter" was missing, not because it was made in cash, but because payment was not yet due for that tenant. Moreover, plaintiff's cash-impossibility theory does not explain away the other deficiencies in the documentation he submitted, including the failure to provide copies of the back sides of the money orders, legible dates, or verification of another consecutive month of rental income.

13

Plaintiff suggests SPS acted unreasonably by "essentially bur[ying] [plaintiff] with a series of contradictory letters spanning approximately one year," and providing "a moving target which, over time, suggested [plaintiff] had cured SPS'[s] concerns." Not so. Viewing the record in the light most favorable to the trial court's decision, we conclude substantial evidence supported the court's finding that "[d]efendants were unambiguous" in expressing their need for the rental income verification and other documents in order to process plaintiff's application. As recounted above, SPS, through its written and other contacts with plaintiff, attempted to provide him with notice of the deficiencies in his application. Plaintiff points us to nothing in the record demonstrating that SPS suggested plaintiff had cured any defects only to demand the same documents again. To the contrary, the paper trail between November 2015 and April 2017 reflects SPS's repeated requests for the same types of missing documentation, most notably, the rental income verification records that plaintiff failed to adequately supply.

In sum, we conclude substantial evidence supports the trial court's finding that plaintiff's loan modification application was not "completed" "within the reasonable timeframes specified by" SPS, and thus, plaintiff was not entitled to the dual tracking protections under the HBOR. (§ 2923.6, subds. (c), (h).)

## C. The UCL

Plaintiff contends the trial court erred in dismissing his UCL claim because the court found only that plaintiff did not prove "unlawful" conduct, without giving him the opportunity to prove defendants' violation of the "unfair" prong of the UCL. Though we agree that plaintiff's UCL claim encompassed theories under both the statute's unlawful and unfair prongs,

14

we conclude that the trial court impliedly rejected plaintiff's theories under both prongs, and that substantial evidence supports the court's decision.

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) " 'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.' An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." (*Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1554 (*Berryman*).) Under the "unlawful" prong, " 'the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL.' " (*Berryman*, at p. 1554.) Under the "unfair" prong, " 'a practice may be deemed unfair even if not specifically proscribed by some other law.' " (*Beverage v. Apple, Inc.* (2024) 101 Cal.App.5th 736, 748.) "[A] business practice is 'unfair' if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1376 (*Klein*).)

In finding against plaintiff on his UCL claim, the trial court stated, "As I find no predicate violation of the HBOR, I find no violation of the UCL." Although plaintiff assumes the court resolved the UCL claim only under the statute's unlawful prong, the court's finding was not expressly limited to a theory of unlawfulness. Rather, the court more generally found "no violation of the UCL," which reasonably encompassed a finding against plaintiff on his statutory claim as a whole. To the extent the statement of decision may be perceived as ambiguous on this score, it was incumbent on plaintiff to bring the ambiguity to the trial court's attention. (See Code Civ. Proc., § 634.)

Because he did not, the doctrine of implied findings was not disabled on appeal (*Thompson*, *supra*, 6 Cal.App.5th at p. 983), and we " 'must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision.' " (*Id.* at p. 981.) In other words, we imply from the trial court's finding that plaintiff did not prove his UCL claim under the statute's unfair prong.

As pleaded, plaintiff's UCL claim incorporated by reference "the acts and omissions of the defendants" alleged throughout the operative complaint. Thus, the UCL claim, under all three statutory prongs (i.e., unlawful, unfair, or fraudulent), was predicated on the alleged HBOR violations. Because plaintiff has forfeited his challenges to the trial court's decision on all but the dual tracking violation claim under section 2923.6 (see Discussion, part A., *ante*), the sole question before us is whether substantial evidence supported the court's implied finding that defendant's acts underlying the dual tracking claim did not constitute unfair business practices within the meaning of the UCL. Our answer to this question is yes.

As we have discussed, SPS kept plaintiff's mortgage assistance application open from November 2015 through April 2017. During that time, SPS provided numerous written notices of information and documents missing from plaintiff's loan modification application and repeatedly extended his deadline to comply. When plaintiff reported his inability to comply with SPS's request for bank statements showing his receipt of rental income, SPS offered a workaround by allowing him to submit copies of the front and back sides of money orders for two consecutive months of rent payments. Despite SPS's reasonable accommodations and timeframes for compliance, plaintiff failed to provide all necessary documentation for SPS to process his application. On this record, the trial court could and did

reasonably find that defendants' conduct was not unfair within the meaning of the UCL. On this score, the record does not establish that SPS caused any substantial injury to plaintiff, though it does reflect that any assumed injury could reasonably have been avoided had plaintiff provided the necessary documents to complete his application. (*Klein, supra,* 202 Cal.App.4th at p. 1376.) Accordingly, we reject plaintiff's challenge to the dismissal of his UCL claim.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.

_____
Fujisaki, Acting P. J.

WE CONCUR:

_____
Petrou, J.

_____
Rodríguez, J.

*Vasquez v. National Default Servicing Corp.* (A167590)

17